SEYFARTH SHAW LLP
Ryan McCoy (SBN 276026)
rmccoy@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:   (415) 397-2823
Facsimile:   (415) 397-8549

SEYFARTH SHAW LLP
Reiko Furuta (SBN 169206)
rfuruta@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendant MAXIMUS
CONSULTING SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREA BARNES,<br><br>               Plaintiff,<br><br>     v.<br><br>MAXIMUS CONSULTING SERVICES, INC.; and DOES 1 through 30; inclusive,<br><br>               Defendants. | Case No. 5:25-cv-02108-KK-SP<br><br>**DEFENDANT MAXIMUS CONSULTING SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[Riverside County Superior Court Case No. CVPS2504251]<br><br>Date:   July 2, 2026<br>Time:  9:30 a.m.<br>Ctrm.:  3<br><br>Complaint Filed:  July 2, 2025<br>FAC Filed:  December 3, 2025<br><br>Trial Date:  None Set |

326156381v.5

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS ......................................................................................3

  A.  Maximus Is A Government Services Company That Provides Services To Health And Human Services Agencies ...................................3

  B.  Maximus Maintains Comprehensive And Lawful Wage And Hour Policies ........................................................................................................3

  C.  Maximus Maintains Lawful Discrimination, Harassment, And Retaliation Policies......................................................................................4

  D.  May 2022: Plaintiff Joins Maximus As A Salaried, Exempt Limited-Service Business Analyst Employed On An At-Will Basis. ........5

  E.  November 2022: Plaintiff Is Transferred To Non-Exempt Team Leader Position In The Call Center..............................................................5

  F.  December 2022: Plaintiff Submits A Complaint Against An IT Technician And Mai Vang; Maximus Immediately Investigates And Takes Corrective Action.......................................................................6

  G.  May 2023: Plaintiff Takes Medical Leave Of Absence.............................7

  H.  August 2023: Plaintiff's Position Is Eliminated As Part Of A Company-Wide Reduction In Force .........................................................7

III.  LEGAL STANDARD .............................................................................................8

IV.  ANALYSIS ..............................................................................................................9

  A.  Plaintiff's Discrimination Claims Fail Because Plaintiff Cannot Show Maximus Took Any Adverse Actions Against Plaintiff Because Of Disability Or Religion (Seventh And Tenth Claims)............9

    1.  Plaintiff Cannot Satisfy Her Prima Facie Burden Because There Was No Indicia Of Religious Or Disability Discrimination.....................................................................................9

    2.  There Is No Triable Issue As To Pretext ......................................11

  B.  Plaintiff's Retaliation Claim Fails Because She Cannot Satisfy Prima Facie Case Of Retaliation – No Causal Nexus (Fourteenth Claim)...........................................................................................................12

  C.  Plaintiff's Harassment Claim Fails Because No Severe Or Pervasive Harassing Conduct Was Alleged (Seventh Claim) ..................14

i

D.    Plaintiff Cannot State Any Violation Of CFRA Rights (Ninth Claim)..............................................................................15

E.    Plaintiff's Accommodation And Interactive Process Claims Fail (Eighth, Eleventh And Twelfth Claims) ......................................16

    1.    The Disability Accommodation And Interactive Process Claims Have No Merit................................................................16

    2.    The Religious Accommodation Claim Has No Merit ....................17

F.    Plaintiff's Claim For Failure To Prevent Harassment, Discrimination And Retaliation And Claim For Wrongful Termination Fail Because They Are Derivative And The Underlying Claims Fail (Thirteenth And Fifteenth Claims)....................18

G.    Plaintiff's Payroll Record Claim Fails Because There Is No Evidence That Plaintiff Made Request (Seventeenth Claim) ...................18

H.    The Labor Code Wage Claims Fail (First Through Sixth Claims, Sixteenth Claim)..........................................................................19

    1.    Plaintiff's Off The Clock And Overtime Claims Are Meritless...................................................................................19

    2.    Plaintiff's Meal Break and Rest Break Claims Are Meritless........19

    3.    Plaintiff's Expense Reimbursement Claim is Meritless.................20

    4.    Plaintiff's Derivative Wage Statement, Waiting Time, And UCL Claims Also Fail ..................................................................21

I.    Plaintiff's Punitive Damages Claim Fails.................................................22

J.    Plaintiff's Damages Claims Are Barred Or Materially Limited By Her Lack Of Mitigation And Her Testimony That She Was Unable To Work ...........................................................................................23

V.    CONCLUSION ...............................................................................24

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bolden-Hardge v. Office of the Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023) ........................................................................... 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................ 8

*Coleman v. Quaker Oats, Co.*,
232 F.3d 1271 (9th Cir. 2000) .......................................................................... 11

*Crisanto v. Cnty. of Tulare*,
2015 WL 7188165 (E.D. Cal., 2015) ............................................................... 10

*Dollar v. Shoney's, Inc.*,
981 F. Supp. 1417 (N.D. Ala. 1997) ................................................................ 16

*EEOC v. Farmer Bros. Co.*,
31 F.3d 891 (9th Cir. 1994) .............................................................................. 23

*Gunawan v. Howroyd–Wright Employment Agency*,
997 F. Supp. 2d 1058 (C.D. Cal. 2014) ........................................................... 21

*Hammitt v. Lumber Liquidators, Inc.*,
19 F. Supp. 3d 989 (S.D. Cal. 2014) ................................................................ 20

*Kern v. Levolor Lorentzen, Inc.*,
899 F.2d 772 (9th Cir. 1990) ............................................................................ 23

*Krosinico v. JP Morgan Chase & Co.*,
No. 06-CV-1178 (SJF), 2006 WL 3050869 (E.D.N.Y. Oct. 19, 2006) ................... 16

*Matsushita Electric Industry Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................................ 8

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............................................................................................ 9

*Ngo v. Reno Hilton Resort Corp.*,
140 F.3d 1299 (9th Cir. 1998), as amended, 156 F.3d 988 (9th Cir.
1998) .................................................................................................................. 22

*Nichols v. Azteca Rest. Enters.*,
256 F.3d 864 (9th Cir. 2001) ............................................................................ 14

*O'Connor v. PCA Family Health Plan, Inc.*,
200 F.3d 1349 (11th Cir. 2000) ........................................................................ 16

*Ritenour v. Carrington Mortg. Servs. LLC*,
228 F. Supp. 3d 1025 (C.D. Cal 2017) ............................................................. 21

iii

*Triton Energy Corp. v. Square D Co.*,
  68 F.3d 1216 (9th Cir. 1995) ............................................................................10

*Weil v. Citizens Telecom Servs. Co.*,
  922 F.3d 993 (9th Cir. 2019) ...............................................................................9

**State Cases**

*Alberts v. Aurora Behavioral Health Care*,
  241 Cal. App. 4th 388 (2015) ............................................................................21

*Brinker v. Superior Court*,
  53 Cal. 4th 1004 (2012) .......................................................................................4

*Cassady v. Morgan, Lewis & Bockius LLP*,
  145 Cal. App. 4th 220 (2006) ............................................................................20

*Friedman v. S. Cal. Permanente Med. Grp.*,
  102 Cal. App. 4th 39 (2002) ..............................................................................17

*Gomez v. Lincare, Inc.*,
  173 Cal. App. 4th 508 (2009) ............................................................................21

*Guz v. Bechtel Nat'l, Inc.*,
  24 Cal. 4th 317 (2000) ...................................................................................9, 11

*Horn v. Cushman & Wakefield W., Inc.*,
  72 Cal. App. 4th 798 (1999) ..............................................................................11

*Morgan v. Regents of Univ. of Cal.*,
  88 Cal. App. 4th 56 (2000) ................................................................................14

*Muller v. Auto. Club*,
  61 Cal. App. 4th 431 (1998) ..............................................................................15

*Nealy v. City of Santa Monica*,
  234 Cal App. 4th 359 (2015) .............................................................................17

*Neisendorf v. Levi Strauss & Co.*,
  143 Cal. App. 4th 509 (2006) ............................................................................13

*Reeves v. Safeway Stores, Inc.*,
  121 Cal. App. 4th 95 (2004) ..............................................................................12

*Roby v. McKesson Corp.*,
  47 Cal. 4th 686 (2009) .......................................................................................22

*Soria v. Univision Radio Los Angeles, Inc.*,
  5 Cal. App. 5th 570 (2016) ................................................................................15

*Trujillo v. N. Cnty. Transit Dist.*,
  63 Cal. App. 4th 280 (1998) ..............................................................................18

*Yanowitz v. L'Oreal USA, Inc.*,
  36 Cal. 4th 1028 (2005) .....................................................................................12

iv

326156381v.5

**Federal Statutes**

FMLA .......................................................................................................................... 16

**State Statutes**

2 Calif. Code Regs. § 7297.2(c)(1) .......................................................................... 16

Civ. Code § 3294(b) .................................................................................................. 22

Fair Employment and Housing Act ................................................................ 9, 17, 18

Gov. Code 12945.2(a) ............................................................................................... 16

Gov. Code § 12926 .............................................................................................. 16, 17

Gov. Code § 12940 .................................................................................................... 16

Gov. Code § 12940(j)(1) ........................................................................................... 14

Gov. Code § 12940(n) ............................................................................................... 17

Lab. Code § 2802 .......................................................................................... 2, 3, 4, 20

Lab. Code § 2802(a) .................................................................................................. 20

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................ 9

Fed. R. Civ. P. 56(a) ................................................................................................... 8

v

326156381v.5

## I.    INTRODUCTION

Plaintiff Audrea Barnes ("Plaintiff") asserts a wide range of employment claims, but the record contains no evidence supporting discrimination, retaliation, harassment, wage-and-hour violations, or recoverable damages. Plaintiff bears the burden to come forward with evidence supporting each claim, and she has not done so. Instead, the undisputed material facts—including Plaintiff's own deposition testimony[1]—show that her claims cannot survive summary judgment and that Maximus is entitled to dismissal.

Plaintiff was hired by Defendant Maximus Consulting Services, Inc. ("Maximus") in May 2022 into a limited-service role as a salaried, exempt Business Analyst. When that role concluded, she moved into a remote, hourly, non-exempt Team Leader position, which she held through her termination in August 2023 as part of a company-wide reduction in force. She began a medical leave of absence in May 2023.

Plaintiff alleges that during her employment with Maximus, she was subject to religious and disability discrimination, retaliation, harassment, wrongful termination, and various wage and hour violations. The record does not support those allegations.

First, Plaintiff's discrimination, retaliation, and wrongful termination theories fail because the record contains no evidence connecting her termination to religion, disability, medical leave, or any protected complaint. The undisputed evidence shows instead that Plaintiff was included in a company-wide reduction in force that used objective criteria—performance score and length of service—and did not consider religion, disability, leave status, or complaint history. Plaintiff ranked near the bottom of 133 employees under that process, and 53 employees, including six in her same role,

---

[1] Plaintiff did not notice or take any depositions prior to the discovery cut-off date (McCoy Dec. ¶ 3), so Plaintiff's deposition testimony is the only such testimony in this case. Maximus has submitted additional declarations signed under penalty of perjury to establish there is no triable issue of material fact as to any of Plaintiff's claims.

1

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5

were recommended for termination. Just as important, Plaintiff admitted at deposition that she has no evidence that her inclusion in the reduction in force was unlawful. That admission is consistent with the record and fatal to her claims.

Plaintiff's harassment claim fails for a similar reason. The conduct she identifies is limited and undisputed: a supervisor told her, in the context of customer-facing communications, to use "Happy Holidays" rather than "Merry Christmas." Plaintiff identifies no repeated religious comments, no discipline tied to religion, and no ongoing conduct after that brief exchange. On these facts, that conduct does not rise to the level of severe or pervasive harassment.

Plaintiff's wage and hour claims also fail because Plaintiff's own testimony defeats them. She testified that she was paid for all of her work time as a non-exempt employee. She further testified that her meal and rest breaks were scheduled, that she clocked out for meal periods, and that any missed or noncompliant breaks were reported through Maximus's exception process. And although she claims unreimbursed expenses, she offers no competent evidence showing necessary, unreimbursed business expenses recoverable under Labor Code section 2802.

Finally, even apart from liability, Plaintiff's damages theories fail or are sharply limited by her own testimony. She did not look for other work after her separation, and she testified that she remains unable to work. Those facts independently bar or substantially limit any claim for back pay or front pay. Her punitive damages claim also fails because there is no evidence—let alone clear and convincing evidence—of malice, oppression, or fraud by any officer, director, or managing agent of Maximus.

In short, Plaintiff has asserted numerous claims, but the record—especially Plaintiff's own testimony—does not provide the evidence needed to support them. Because no triable issue of material fact remains, the Court should grant Maximus's motion for summary judgment in full or, at a minimum, summarily adjudicate each challenged claim.

2

---

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES<br>ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5

## II.   STATEMENT OF FACTS

### A.   Maximus Is A Government Services Company That Provides Services To Health And Human Services Agencies

Maximus is a leading global government services company specializing in providing business process services, technology solutions, and consulting services to government health and human services agencies. (Williams Dec. ¶ 3.) The company operates on a global scale, offering federal, state, and local governments in the United States and internationally the ability to implement programs rapidly with scalable operations and automated systems. (Williams Dec. ¶ 4.) From Medicaid and Medicare to welfare-to-work and program modernization, Maximus's comprehensive solutions help governments run effectively and efficiently to achieve their goals.

Maximus partners with governmental entities to operate call centers. (UF 1.) Personnel at those call centers handle inquiries for state health programs. (UF 2.) Maximus also employs staff who handle administrative tasks relating to appeals of decisions relating to those health programs, including reviewing and processing appeals, communicating with involved parties, and ensuring proper documentation. (Williams Dec. ¶ 6.)

### B.   Maximus Maintains Comprehensive And Lawful Wage And Hour Policies

There is no dispute that Maximus's relevant wage and hour policies comply with California law. Maximus's Overtime Policy provides that non-exempt employees receive overtime in accordance with federal and state wage and hour laws. (UF 3.) Employees are responsible for accurately reporting all working hours on their timesheets, and that the timely and accurate submission of timesheets is critical. (UF 4.) When employees receive their paycheck, they are required to verify immediately that they were paid correctly for all regular and overtime hours. (UF 5.)

California employees are required to take their first meal period by the end of

3

326156381v.5

their fifth hour of work. (UF 6.) If an employee passes the fifth hour of work without being provided a meal period, that would be considered a meal period violation. *Brinker v. Superior Court*, 53 Cal. 4th 1004, 1041 (2012). Employees cannot waive their meal period if they work more than six hours in a shift. A second meal period is required if employees work more than ten hours, but they can only waive their second meal period if they work less than 12 hours in a shift.  (UF 7.) Employees are relieved of all duties during meal periods. (UF 8.) Employees are entitled to one paid 15-minute rest break if they work a shift longer than 3.5 hours, two paid rest breaks if they work a shift longer than six hours, and three paid rest breaks if they work a shift longer than 10 hours. (UF 9.)

Maximus trains non-exempt employees, including Plaintiff, to record all time worked, including overtime, and prohibits off-the-clock work. (UF 10.) Maximus maintains a process for employees to report missed, late, or interrupted meal periods and rest periods, and employees are paid premiums when a qualifying exception is reported. (UF 11.)

### C.    Maximus Maintains Lawful Discrimination, Harassment, And Retaliation Policies

Maximus is dedicated to "responding promptly and appropriately to any acts of harassment, discrimination or retaliation by maintaining a disciplinary system that is designed to deter acts of harassment, discrimination or retaliation . . ." (Williams Dec., ¶ 7, Exh. A, p. 5.) Maximus "prohibits any harassment or discrimination based on a protected class, including … religion, … disability …." (*Id*. at p. 16.)  Moreover, Maximus "does not tolerate retaliation against an employee who has reported sexual or other harassment or discrimination." (*Id*. at p. 15.)

Maximus offers multiple avenues by which employees can make complaints, including reporting to: (1) their supervisor; (2) their human resources representative; or (3) the Ethics Hotline, available by phone and online. (*Id*.) Maximus's policy requires

4

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5

that all reported concerns will be investigated in a timely manner and confidentiality maintained to the greatest extent possible. (*Id*.) Based upon the investigation findings "[a]ppropriate follow up action will be implemented . . ." (*Id*.)

### D.    May 2022: Plaintiff Joins Maximus As A Salaried, Exempt Limited-Service Business Analyst Employed On An At-Will Basis.

On May 2, 2022, Maximus hired Plaintiff as an exempt Limited-Service Full-Time Business Analyst out of Maximus's Folsom location. (UF 12.) As a Business Analyst, Plaintiff worked remotely from her residence. (UF 13.) In this position, the job duties include assessing the coding needs for the business units and gathering requirements for modifications. Plaintiff was supervised in this position by Mai Vang until Plaintiff transferred to a position in the Call Center in November 2022. (UF 14.) In both roles, Plaintiff was employed on an at-will basis. (UF 15.)

### E.    November 2022: Plaintiff Is Transferred To Non-Exempt Team Leader Position In The Call Center

On or about November 13, 2022, Plaintiff's position as a Business Analyst ended, and she was reassigned to work at Maximus's California Health West Division Call Center as a non-exempt Team Leader. (UF 16.) Plaintiff worked in this position remotely. (UF 17.) In this position, Plaintiff's job duties included handling customer calls and providing relevant information. As a Team Leader, Plaintiff was supervised by Dion Allen beginning in December 2022. (UF 18.)

Plaintiff was trained on the timekeeping process when she moved into the non-exempt Team Leader role. (UF 19.) Plaintiff understood she was to record all hours worked and report any missed or noncompliant meal periods through the established exception process. (UF 20.) Plaintiff admitted in her deposition that during her tenure as a non-exempt Team Leader, Plaintiff's meal and rest breaks were scheduled and she would clock out for the meal period by the time it was scheduled for her. (UF 21.)

5

**F.        December 2022: Plaintiff Submits A Complaint Against An IT Technician And Mai Vang; Maximus Immediately Investigates And Takes Corrective Action**

On December 7, 2022, Plaintiff submitted a complaint through Maximus's Ethics Hotline portal against an IT Technician and Ms. Vang. (UF 22.) Plaintiff's complaint was three–fold, alleging: (1) on or about September 15, 2022 the IT Technician changed Plaintiff's global password without her permission; (2) Ms. Vang ignored Plaintiff's reports of unprofessional conduct by the IT Technician; and (3) Ms. Vang questioned Plaintiff when she requested time off for voting. (UF 23.)

Within *one week* of receiving Plaintiff's complaint, Maximus initiated an investigation and the lead investigator Paula Hamilton interviewed Plaintiff. (UF 24.) As part of its investigation into Plaintiff's claims, Maximus interviewed seven other Maximus employees, including Mai Vang. (UF 25.) The investigation determined that the IT Technician followed standard protocol when he temporarily reset Plaintiff's password and provided her a new laptop, resulting in an unsubstantiated determination. (UF 26.) Maximus further determined Plaintiff's claim that Ms. Vang ignored reports of unprofessional conduct was unsubstantiated, as the employee in question had already received a verbal corrective action. (UF 27.) With respect to Plaintiff's third claim, it was determined that Plaintiff was permitted to use PTO to vote in person on Election Day, consistent with Maximus's policy. (UF 28.)

During the investigation, Plaintiff additionally claimed to Ms. Hamilton that Mr. Allen reprimanded her for saying "Merry Christmas" during the Christmas season. In support, Plaintiff produced a Teams chat from a December 19, 2022 meeting in which Mr. Allen advised that "Happy Holidays" is more appropriate for customer-facing communications. (UF 29.) The chat confirms that Mr. Allen's guidance was directed at maintaining neutral, client-aligned communications—not at restricting Plaintiff's personal religious expression. (UF 30.) Critically, Plaintiff was not disciplined for saying "Merry Christmas." (UF 31.) Nor did she allege that any additional comments

6

326156381v.5

were made by Mr. Allen about religion after the December 2022 meeting and a follow-up call. (UF 32.)

Maximus closed the investigation on January 20, 2023 and Ms. Hamilton informed Plaintiff of the outcome of the investigation on January 26, 2023, including that CDPH (the government client) expects employees to maintain neutral, secular with customers, which includes avoiding statements such as Merry Christmas. (UF 33.)

At her deposition, Plaintiff testified that she was not aware of the investigation's results at the time they were communicated, but, after reviewing those results during her deposition, she stated that she was satisfied with Maximus's response. (UF 34.)

### G.    May 2023: Plaintiff Takes Medical Leave Of Absence

On or about May 4, 2023, Plaintiff began a leave of absence due to a leg and hip injury and requested medical leave. (UF 35.) Maximus approved Plaintiff's request for a medical leave of absence through June 23, 2023. (UF 36.) Plaintiff subsequently requested extensions of her leave on June 24 and July 25, both of which Maximus approved.  Plaintiff remained on approved leave through August 2023, when her position was eliminated. (UF 37.)

### H.    August 2023: Plaintiff's Position Is Eliminated As Part Of A Company-Wide Reduction In Force

As part of a company-wide reduction in force, Maximus eliminated Plaintiff's position and terminated her employment on August 4, 2023. (UF 38.) Maximus's Human Resources department uses a standardized formula to determine RIF selections, based on a combined score of (1) retention credits derived from the employee's most recent annual performance rating and (2) service credits based on length of service. (UF 39.) These criteria are established in advance and applied uniformly across the affected employee population.(UF 40.) The RIF rankings were generated using only

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5

these objective inputs—performance and tenure—and did not include any fields for protected status, leave status, complaint history, religion, or disability. (UF 41.)

Based on Plaintiff's performance rating and relatively short tenure, Plaintiff received a retention score that ranked the fifth lowest out of 133 employees. (UF 42.) Consistent with that ranking, Plaintiff was among 53 Call Center employees in the California Health West Division recommended for termination in the August 2023 RIF, including six individuals in her same job position. (UF 43.) Those responsible for applying and approving the RIF criteria did not consider Plaintiff's medical leave, any alleged disability, religion, or prior complaints in making the selection. (UF 44.) Plaintiff admitted at deposition that she has no evidence that Maximus's decision to include her in the RIF was somehow unlawful. (UF 45.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) aims to dismiss factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate against a party who cannot "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id*. at 323. To demonstrate a genuine issue of triable material fact, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the non–moving party, there is no 'genuine issue for trial." *Matsushita Electric Industry Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Where, as here, the undisputed evidence negates essential elements of Plaintiff's claims and no reasonable inference supports liability, Rule 56 requires entry of judgment in Maximus's favor as a matter of law.

8

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5

## IV.   ANALYSIS

### A.   Plaintiff's Discrimination Claims Fail Because Plaintiff Cannot Show Maximus Took Any Adverse Actions Against Plaintiff Because Of Disability Or Religion (Seventh And Tenth Claims)

Plaintiff's seventh and tenth causes of action are for religious and disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"). California courts apply the three-stage burden shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to such claims. *Guz v. Bechtel Nat'l, Inc*., 24 Cal. 4th 317, 354 (2000)*; see Weil v. Citizens Telecom Servs. Co*., 922 F.3d 993, 1002 (9th Cir. 2019) (affirming use of the *McDonnell Douglas* burden shifting test in a California state court case that was removed to the United States Northern District). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Guz*, 24 Cal. 4th at 354. If the plaintiff establishes a *prima facie* case, the employer may rebut the presumption of discrimination by producing evidence that an adverse employment action was taken for a legitimate, non–discriminatory reason. *Id*. at 355-56. Once the employer does so, the plaintiff then bears the burden to establish— through **specific** and **substantial** evidence—that the employer's proffered reason is pretextual and that the real reason was discriminatory animus. *Id*. at 356. Here, Plaintiff cannot satisfy either her *prima facie* or pretext burdens.

### 1.   Plaintiff Cannot Satisfy Her *Prima Facie* Burden Because There Was No Indicia Of Religious Or Disability Discrimination

To establish a *prima facie* case of discrimination, Plaintiff must establish (1) she was the member of a protected class; (2) she had a satisfactory job performance; (3) she suffered an adverse employment action; and (4) some other circumstance suggesting a discriminatory motive. *See Crisanto v. Cnty. of Tulare,* 2015 WL 7188165, at *3 (E.D. Cal., 2015).

9

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

Importantly, Plaintiff confirmed at deposition that she has no evidence whatsoever of any discriminatory motive or anything to suggest that Maximus took any adverse employment actions against Plaintiff because of her religion or disability. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (court held "conclusory allegations, empty rhetoric, unsupported speculation" do not satisfy standard for summary judgment motions.)

That admission is consistent with—and reinforced by—the undisputed record evidence. Plaintiff cannot identify any discriminatory statements, actions, or conduct by any supervisor or decision-maker linking her religion or disability to the decision to terminate her employment. (UF 46.) Specifically, the *only* adverse action Plaintiff is alleging is her termination of employment in August 2023. (UF 47.) Plaintiff admitted at deposition that she does not have any proof that she was terminated from her position other than for lack of work:

> Q:  Do you have any reason to believe the termination reason provided to you namely, quote, Lack of work, is incorrect?
> A   I don't know because I can't validate that, if it's factual or not.
> Q   You have no reason or evidence to disprove the reason that was provided to you?
> A   I have no evidence to disprove.

(UF 48.)

That admission aligns with the undisputed evidence establishing a legitimate, non-discriminatory basis for Plaintiff's termination. Plaintiff was selected for termination through a company-wide RIF that applied objective criteria across 133 ranked employees, and she ranked among the lowest based on performance score and tenure. (UF 49.) The RIF criteria is fixed, uniformly applied, and does not include religion, disability, leave status, or complaint history. (UF 50.)

Further, there is no evidence of discriminatory comments tied to the termination decision, no evidence of disparate treatment compared to similarly situated employees,

10

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5

and no evidence that the RIF criteria were manipulated or not applied consistently as to Plaintiff. (UF 51.) There were no overrides or deviations from the formula for Plaintiff, and if available, the decision-makers applied the rankings mechanically. (UF 52.)

To the contrary, the record affirmatively establishes that Plaintiff's termination flowed from a neutral, objectively applied process unrelated to any protected characteristic or activity. On this record—where Plaintiff disclaims any evidence of discriminatory motive and the undisputed facts independently negate any such inference—Plaintiff cannot establish the requisite circumstance suggesting discriminatory motive as a matter of law.

### 2.      There Is No Triable Issue As To Pretext

Even assuming that Plaintiff has evidence sufficient to meet her *prima facie* burden (she cannot), her discrimination claims still fail for the independent reason that Maximus has articulated—and the undisputed record confirms—a legitimate, non-discriminatory basis for her termination, which Plaintiff cannot show to be pretextual.

Plaintiff can survive summary judgment only if she produces "specific" and "substantial" evidence of pretext, a burden she cannot meet. *See Horn v. Cushman & Wakefield W., Inc*., 72 Cal. App. 4th 798 (1999) ("specific" and "substantial" evidence of pretext required to survive summary judgment.) As provided above, Plaintiff admits she has no evidence to dispute the stated reason for her termination or to suggest it was motivated by discrimination. (UF 53.)

Moreover, where, as here, an employer relies on a neutral reduction-in-force process, courts consistently recognize such decisions as legitimate and nondiscriminatory absent evidence of manipulation or disparate treatment. *Guz*, 24 Cal. 4th at 357; *Coleman v. Quaker Oats, Co*., 232 F.3d 1271, 1282 (9th Cir. 2000). Plaintiff offers no evidence that the RIF criteria were false, inconsistently applied, or manipulated as to her. Nor does she identify any similarly-situated employee who was treated more favorably under the same ranking process. As set forth above, the record

326156381v.5

contains no evidence of deviations from the established criteria or individualized exceptions in Plaintiff's case.

To the contrary, the undisputed evidence shows that 53 employees in the division, including six in Plaintiff's same position, were terminated under the same RIF. (UF 54.) That undisputed fact further confirms the RIF was broadly applied and not targeted, and forecloses any reasonable inference that Plaintiff's inclusion was the result of discriminatory or retaliatory motive.

On this record—where the employer's explanation is supported by objective evidence and Plaintiff offers no specific, substantial evidence of pretext—no reasonable jury could conclude that Maximus's stated reason was a cover for discrimination. Summary judgment is therefore required.

**B.    Plaintiff's Retaliation Claim Fails Because She Cannot Satisfy *Prima Facie* Case Of Retaliation – No Causal Nexus (Fourteenth Claim)**

Plaintiff claims that she was wrongfully terminated in retaliation for taking medical leave and making complaints of religious harassment and unpaid wages. (UF 55.) To state a *prima facie* case of retaliation, Plaintiff must show: (1) she engaged in a protected activity; (2) the employer subjected her to an adverse employment action; and (3) there was a causal connection between the two. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). Again, Plaintiff cannot satisfy a *prima facie* case as she cannot establish any causal link between her alleged protected activity and her termination. *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 108 (2004).

As set forth above, Plaintiff admits she has *no evidence* that any protected activity was the reason why she was terminated from her position. (UF 56.) The undisputed record also affirmatively negates causation.  Maximus determined RIF selections using a retention credit score derived from each employee's most recent annual performance review and length of service. Plaintiff's performance review—the key input into that score—was completed in February 2023, *more than two months*

12

before Plaintiff began her medical leave. (UF 57.)

That timing forecloses any reasonable inference that Plaintiff's May 2023 leave influenced the performance-based component of her ranking. *Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 520 (2006) ("The unchallenged finding that [the employer] had a legitimate, nondiscriminatory reason [to transfer the plaintiff], which had nothing to do with her CFRA leave, bars [the plaintiff] from articulating a cognizable cause of action for the jury's consideration based on [the employer's] alleged refusal to honor the CFRA's right to reinstatement.")

Likewise, the termination decision itself was made pursuant to a RIF process that did not consider protected complaints or leave status. (UF 58.) The RIF rankings were generated mechanically based on each employee's performance score and length of service, with no individualized override as to Plaintiff and no input reflecting leave status, complaint history, religion, or disability. (UF 59.) Consistent with that process, the performance review underlying Plaintiff's ranking evaluates standard performance factors and contains no indication that her religion, alleged wage concerns, or any other protected activity played any role in determining her score. (UF 60.)

Under these circumstances, Plaintiff cannot establish the required causal nexus as a matter of law. The undisputed evidence shows that the criteria determining Plaintiff's ranking were fixed before her leave began and were applied uniformly across the workforce, such that her inclusion in the RIF was the result of neutral factors unrelated to any protected activity. There is likewise no evidence that the decision-makers who applied or approved the RIF criteria relied on Plaintiff's complaints or leave in selecting her for termination, nor any evidence they deviated from the established formula in her case or treated similarly situated employees differently. *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 56, 70 (2000) (evidence that decisionmaker was aware of protected activity is essential to causal link).

13

On this record—where the termination decision flows directly from a uniformly applied, objective ranking system, and Plaintiff offers no contrary evidence—a reasonable trier of fact could not infer that her protected activity was a substantial motivating factor in the decision to terminate her employment.

### C.    Plaintiff's Harassment Claim Fails Because No Severe Or Pervasive Harassing Conduct Was Alleged (Seventh Claim)

Plaintiff's seventh cause of action for religious harassment fails because she cannot show the alleged actions were severe or pervasive. To prevail on her religious harassment claim, Plaintiff must show that: (1) she was an employee of Maximus; (2) that Plaintiff was subjected to harassing conduct because of her religion; (3) that the harassing conduct was severe or pervasive; (4) that a reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive; (5) that Plaintiff considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive; (6) that a supervisor engaged in the conduct; (7) that Plaintiff was harmed; and (8) that the conduct was a substantial factor in causing Plaintiff's harm. *See* Gov. Code § 12940(j)(1).

To determine whether conduct is sufficiently severe or pervasive, the court must look at all surrounding circumstances, including frequency, severity, whether the alleged conduct is threatening or humiliating, or merely an offensive utterance, and whether it interferes with an employee's work performance. The required level of severity or seriousness "varies inversely with the pervasiveness or frequency of the conduct." *See Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001).

Here, there is no claim or evidence of any severe or pervasive conduct to support a religious harassment claim. Mr. Allen informed her during a team meeting that she "should use Happy Holiday in a business setting" especially when speaking with a customer. (UF 61.) Plaintiff admits that besides a call immediately after the

14

326156381v.5

team meeting where Mr. Allen allegedly reiterated what he communicated in the meeting, Plaintiff cannot recall any further communications from Mr. Allen about this issue. (UF 62.) Moreover, after this communication with Mr. Allen, she was not disciplined for this action. (UF 63.) She is also unaware as to whether Mr. Allen had similar conversations with other employees about their use of "Merry Christmas" as a greeting. (UF 64.)

Courts have held that such conduct does not amount to severe or pervasive. *See Muller v. Auto. Club,* 61 Cal. App. 4th 431, 446-47 (1998) (upholding summary judgment for defendant where comments may have been upsetting to the plaintiff, but cannot reasonably be viewed as harassment). Indeed, one or two statements from Mr. Allen that Plaintiff should refrain from saying "Merry Christmas" to customers in a business setting "cannot be reasonably viewed as a concerted pattern of harassment" of Plaintiff based on her religion. *Id.* at 447.

Further, the undisputed record shows Maximus promptly investigated Plaintiff's complaint through its Ethics process, interviewed multiple witnesses, and communicated the outcome. (UF 65.) That prompt response further undermines any suggestion of a hostile work environment attributable to Maximus.

## D.    Plaintiff Cannot State Any Violation Of CFRA Rights (Ninth Claim)

Plaintiff cannot prove violation of her CFRA rights because Maximus did *not* deny or interfere with the medical leave Plaintiff requested on May 4, 2023. *Soria v. Univision Radio Los Angeles, Inc.,* 5 Cal. App. 5th 570, 601 (2016) (essential element of *prima facie* case is to show the employer's interference with or denial of CFRA leave rights). Maximus *granted* all of Plaintiff's requests for leave and Plaintiff took all the leave she requested. (UF 66.) Thus, there is no violation of CFRA. Govt. Code 12945.2(a); *Krosinico v. JP Morgan Chase & Co.,* No. 06-CV-1178 (SJF), 2006 WL 3050869, at *2 n.2 (E.D.N.Y. Oct. 19, 2006)("… Plaintiff was granted the FMLA leave she requested. Therefore, Plaintiff cannot satisfy… an interference claim").

15

To the extent Plaintiff claims that Maximus violated her rights under CFRA by terminating her rather than returning her to her position, Maximus will prevail on this claim. Plaintiff had no greater right to continue in her position because of her medical leave than she would have had if she had not taken medical leave. 2 Calif. Code Regs. § 7297.2(c)(1); *see also O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000) (employer could release/dismiss employee on medical leave as part of company-wide reduction in force); *Dollar v. Shoney's, Inc.*, 981 F. Supp. 1417, 1421-22 (N.D. Ala. 1997) (employer could demote employee on medical leave because of inadequate work performance).

The undisputed evidence is that Plaintiff's position was eliminated as part of a broader RIF that affected dozens of employees, including other Team Leaders, and not because she exercised CFRA rights. (UF 67.)

    **E.**    **Plaintiff's Accommodation And Interactive Process Claims Fail (Eighth, Eleventh And Twelfth Claims)**

        **1.**    **The Disability Accommodation And Interactive Process Claims Have No Merit**

Plaintiff alleges that Maximus denied Plaintiff's request for reasonable accommodation by terminating Plaintiff's employment, in violation of Government Code sections 12926 and 12940. (UF 68.) The reasonable accommodation claim fails because the undisputed evidence shows that (1) Maximus approved Plaintiff's requests for medical leave for injury upon Plaintiff's request (UF 69), and (2) as set forth above, a medical leave does not preclude an employee from being subject to a reduction in force. *See* 2 Calif. Code Regs. § 7297.2(c)(1). Moreover, because Maximus granted all of Plaintiff's accommodation requests regarding her medical leave, there can be no failure to engage in the interactive process. *Nealy v. City of Santa Monica*, 234 Cal App. 4th 359, 379 (2015).

The undisputed evidence is that Maximus granted each leave request Plaintiff submitted. Because Maximus provided the accommodation Plaintiff requested, and

16

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5

because her employment ended due to a neutral RIF rather than any denial of accommodation, these claims fail.

### 2.   The Religious Accommodation Claim Has No Merit

Plaintiff further alleges that Maximus failed to accommodate her religious beliefs by preventing her from saying "Merry Christmas" or "God bless" at work in violation of Government Code Secs. 12926 and 12940(n). (UF 70.) Under FEHA, failure to accommodate religion claims are subject to a two-part burden-shifting test. *Bolden-Hardge v. Office of the Cal. State Controlle*r, 63 F.4th 1215, 1222 (9th Cir. 2023). First, the plaintiff must establish a *prima facie* case, which includes among other things that the plaintiff held a bona fide religious belief that the employer was aware of and that conflicted with an employment requirement. *Id.; see also Friedman v. S. Cal. Permanente Med. Grp*., 102 Cal. App. 4th 39, 45 (2002). Once an employee establishes a *prima facie* case of failure to accommodate religion, the burden shifts to the employer to show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Bolden-Hardge*, 63 F.4th at 1224.

Even assuming Plaintiff can satisfy her *prima facie* burden, this claim still fails because the undisputed evidence shows Maximus had a legitimate, client-driven requirement that customer-facing employees communicate in a neutral manner and avoid sectarian greetings when interacting with customers. (UF 71.) Plaintiff identifies no discipline, termination, or other adverse action imposed because of her request to say "Merry Christmas" or "God bless." Nor does she identify any proposed accommodation that would have allowed her to continue using expressly religious customer greetings while preserving Maximus's obligation to meet client expectations for neutral communications. On this record, Plaintiff cannot show that Maximus failed to provide a reasonable accommodation, and Maximus can establish that exempting

17

Plaintiff from the neutral customer-communications expectation would have imposed an undue hardship on its government-facing call-center operations.

**F.  Plaintiff's Claim For Failure To Prevent Harassment, Discrimination And Retaliation And Claim For Wrongful Termination Fail Because They Are Derivative And The Underlying Claims Fail (Thirteenth And Fifteenth Claims)**

Plaintiff's thirteenth and fifteenth causes of action for failure to prevent harassment, discrimination and retaliation and for wrongful termination fail because they are derivative of her harassment, discrimination and retaliation claims. Plaintiff cannot establish that she suffered any harassment, discrimination, or retaliation. *See Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 286, 288-89 (1998) ("There's no logic that says an employee can sue an employer for not preventing discrimination that didn't happen."). Because no underlying harassment, discrimination or retaliation occurred, Plaintiff's failure to prevent claim and wrongful termination claim—wholly derivative claims—fail as a matter of law along with her baseless FEHA claims.

The failure-to-prevent claim independently fails for the additional reason that the undisputed evidence shows Maximus maintained written anti-discrimination, anti-harassment, and anti-retaliation policies; provided complaint channels; and promptly investigated Plaintiff's December 2022 complaint. (UF 72.)

**G.  Plaintiff's Payroll Record Claim Fails Because There Is No Evidence That Plaintiff Made Request (Seventeenth Claim)**

Plaintiff alleges that Plaintiff's counsel requested a copy of Plaintiff's personnel file and payroll records on April 23, 2025. (UF 73.) Maximus has no record that any such request was received by Maximus on or around April 23, 2025. (UF 74.) Maximus received a request for Plaintiff's personnel file and payroll records on January 9, 2024 and timely responded to Plaintiff's counsel with the responsive documents on January 22, 2024 and January 29, 2024. (UF 75.) Accordingly this claim fails.

326156381v.5

**H.    The Labor Code Wage Claims Fail (First Through Sixth Claims, Sixteenth Claim)**

**1.    Plaintiff's Off The Clock And Overtime Claims Are Meritless**

Plaintiff alleges in her Complaint that she was not paid for approximately 20 hours of overtime per week for about six months while a non-exempt employee. (UF 76.) Plaintiff was trained that she was required to accurately record hours worked as an hourly employee. (UF 77.) And Plaintiff admitted at deposition that she was paid for all her work time:

> Q:  You believe you're owed wages for time you spent working?
> A   I believe I was compensated for time I spent working, because I did my timesheets.
> Q    And you did them accurately?
> …
> A   That was for the exempt position -- I mean, the nonexempt position. And that's what I wanted to highlight. I do believe I was compensated for work for that time.
> Q   As a nonexempt employee?
> A   Yes.

(UF 78.) Accordingly, Plaintiff's deposition testimony shows there is no disputed issue of material fact that Plaintiff was accurately compensated for all hours worked. This admission is dispositive, absent evidence that Maximus knew or should have known Plaintiff was performing unrecorded work despite her timesheets.

**2.    Plaintiff's Meal Break and Rest Break Claims Are Meritless**

Plaintiff further alleges that, contrary to Maximus's established policies and practices, she was not provided her legally required 30-minute meal periods or 10-minute rest breaks. (UF 79.) She was required to record any deviations from her scheduled meal and rest breaks on an exception sheet. (UF 80.) She admitted that when she was unable to take a scheduled meal period, "that information is captured in the exception report that was required to submit on each occurrence." (UF 81.) She testified that she would clock out for her scheduled meal period and take at least 30

19

minutes for her meal period. (UF 82.) During her meal periods Plaintiff leaves her computer to handle personal matters or eat. (UF 83.)

As such, Plaintiff's deposition testimony shows there is no disputed issue of material fact that Plaintiff took her scheduled breaks on a regular basis and if there were any deviations, she could inform Maximus on an exception log, and no one prevented her from doing so.

To the extent Plaintiff contends there were isolated deviations, the undisputed evidence is that Maximus maintained a mechanism to report those deviations and Plaintiff knew how to use it, and in fact submitted the exceptions. (UF 84.) Plaintiff identifies no policy or practice that prevented or discouraged compliant breaks.

### 3.    Plaintiff's Expense Reimbursement Claim is Meritless

Finally Plaintiff alleges that she incurred expenses for internet and electricity and used her own tools and equipment for which she was not reimbursed. (UF 85.) Employers must reimburse "all necessary expenditures or losses" incurred by an employee arising directly from the "discharge of his or her duties." Lab. Code, § 2802(a). To establish this claim, Plaintiff must show she: "(1) … made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of [her] discharge of her … duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." *Cassady v. Morgan*, *Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (2006). Plaintiff must also prove these expenses were not reimbursed by Maximus. *Hammitt v. Lumber Liquidators, Inc.*, 19 F. Supp. 3d 989, 1000 (S.D. Cal. 2014) ("To demonstrate that an employer has violated Section 2802, a plaintiff must show … and (3) the employer failed to reimburse the plaintiff for such expenses.").

While working for Maximus, Plaintiff purchased her own computer, as well as the related equipment, because she did not have one to use at home. (UF 86.) She used the computer for her own personal purposes while working for Maximus and still uses

20

it at her home to this day. (UF 87.)

Consequently, Plaintiff cannot show the amount of any recoverable, *necessary* unreimbursed business expense attributable to Maximus. Any computer purchase was for a device Plaintiff also used for personal purposes and continues to use, and the record reflects that Maximus provided Plaintiff with a laptop during her employment. (UF 88.) Plaintiff likewise offers no competent evidence quantifying any necessary unreimbursed portion of internet or electricity attributable to her work for Maximus. Plaintiff admits that she automatically received monthly expense reimbursements for internet use for a portion of her employment. (UF 89.) And prior to the automatic payments, Plaintiff did not submit any requests for the reimbursement of internet, electricity, or computer expenses. (UF 90.)

### 4. Plaintiff's Derivative Wage Statement, Waiting Time, And UCL Claims Also Fail

Plaintiff's wage statement, waiting time, and UCL claims are all derivative of her wage and hour claims discussed above and therefore rise and fall with those claims. *Gunawan v. Howroyd–Wright Employment Agency*, 997 F. Supp. 2d 1058, 1067 (C.D. Cal. 2014) (dismissing inaccurate wage claim as derivative of minimum wage claim, which was dismissed at summary judgment stage); *Alberts v. Aurora Behavioral Health Care*, 241 Cal. App. 4th 388, 400 n.3 (2015) (inaccurate wage statement claim is derivative of failed meal and rest period and overtime claims); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1033-34 (C.D. Cal 2017) (dismissing UCL claim because the claim "is simply based on the aforementioned nine claims and is therefore similarly unsupported."); *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 512 (2009) (failure to provide itemized wage statements, failure to pay wages upon termination of employment, and unfair competition claims are "derivative of a valid claim for wages"). Since the aforementioned wage and hour claims fail, these derivative claims must fall.

21

## I.       Plaintiff's Punitive Damages Claim Fails

To the extent the Court believes a triable issue exists as to any of Plaintiff's claims, Plaintiff's claim for punitive damages should be summarily adjudicated against her. To pursue such a claim, it is Plaintiff who must present clear and convincing evidence of "oppression, fraud, or malice." Civ. Code § 3294(b). But there is no such evidence here. *See Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299 (9th Cir. 1998), as amended, 156 F.3d 988 (9th Cir. 1998) (even intentional discrimination is insufficient to support punitive damages recovery).

Further, punitive damages are available only when the challenged employment action was committed, authorized or ratified by an "officer, director, or managing agent."  Cal. Civ. Code § 3294(b). Here, no such person was involved. *See Roby v. McKesson Corp.*, 47 Cal. 4th 686, 714 (2009) (managing agent must have "'discretionary authority over'… formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership. It is this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice.").

Neither Mr. Allen nor the HR representatives who made the termination decision regarding the employees at the Health West Division Call Center were a managing agent, officer, or director of Maximus, and they lacked authority to set corporate policy for a substantial portion of the company. Mr. Allen managed Team Leaders and Customer Service Representatives at Maximus's California Health West Division Call Center. The HR representatives who made the termination decisions were responsible for ensuring compliance with labor laws, maintaining employee records, and supporting Maximus's daily administrative HR functions. (UF 91.) Therefore, Plaintiff's claim for punitive damages fails.

22

326156381v.5

**J.      Plaintiff's Damages Claims Are Barred Or Materially Limited By Her Lack Of Mitigation And Her Testimony That She Was Unable To Work**

Plaintiff's claims for economic damages fail as a matter of law because she cannot establish that she suffered recoverable wage loss. A plaintiff seeking economic damages must demonstrate that she exercised reasonable diligence in seeking comparable employment and was able to work during the relevant period. See *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir. 1994); *Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772, 781 (9th Cir. 1990).

Here, there is no genuine dispute as to the dispositive facts. Plaintiff's own testimony establishes that she did not seek other employment and, by her own account, was not able to work. These admissions independently defeat any claim for economic damages.

It is undisputed that Plaintiff has made no attempt to search for employment after her separation. (UF 92.) Moreover, she testified that she has not been physically able to work and has not been released to work by a physician. (UF 93.) Because Plaintiff did not seek employment, she cannot establish reasonable diligence. And because she was unable to work, she cannot establish any lost wages attributable to her termination. On these undisputed facts, Plaintiff cannot recover back pay or any ongoing economic damages.

Plaintiff's testimony likewise forecloses any meaningful claim for emotional distress damages. She never sought counseling or therapy for emotional distress issues, and did not recall taking any medications for emotional distress since her employment with Maximus ended. (UF 94.) On this record, no reasonable jury could find that Plaintiff suffered severe or substantial emotional distress, and any such claim is, at most, *de minimis*.

23

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5

## V.     CONCLUSION

For the foregoing reasons, Maximus respectfully requests that the Court grant this motion in its entirety and enter judgment against Plaintiff, or in the alternative, partial summary judgment.

DATED:  June 4, 2026                    SEYFARTH SHAW LLP

By:   */s/ Ryan McCoy*
       Ryan McCoy
       Reiko Furuta
       Attorneys for Defendant
       MAXIMUS CONSULTING SERVICES, INC.

24

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANT'S MOTION- FOR SUMMARY JUDGMENT

326156381v.5