SEYFARTH SHAW LLP
Ryan McCoy SBN 276026
rmccoy@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:   415 397-2823
Facsimile:   415 397-8549

SEYFARTH SHAW LLP
Reiko Furuta SBN 169206
rfuruta@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   310 277-7200
Facsimile:   310 201-5219

Attorneys for Defendant MAXIMUS
CONSULTING SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREA BARNES,<br><br>                    Plaintiff,<br><br>         v.<br><br>MAXIMUS CONSULTING<br>SERVICES, INC.; and DOES 1 through<br>30; inclusive,<br><br>                    Defendants. | Case No. 5:25-cv-02108-KK-SP<br><br>**DEFENDANT MAXIMUS CONSULTING SERVICES, INC.'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[Riverside County Superior Court Case No. CVPS2504251]<br><br>Date:     July 2, 2026<br>Time:     9:30 a.m.<br>Ctrm.:    3<br><br>Complaint Filed:  July 2, 2025<br>FAC Filed:  December 3, 2025<br>Trial Date:  None Set |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MOTION FOR SUMMARY JUDGMENT

326328468v.1

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Maximus Consulting Services, Inc. ("Maximus") hereby submits the following Statement of Uncontroverted Facts in support of its Motion for Summary Judgment or, in the alternative, Partial Summary Judgment as to the First Amended Complaint of Plaintiff Audrea Barnes "Plaintiff":

| No. | Uncontroverted Material Fact | Supporting Evidence |
| --- | --- | --- |
| 1. | Maximus partners with governmental entities to operate call centers. | Williams Dec. ¶ 5. |
| 2. | Personnel at those call centers handle inquiries for state health programs. | Williams Dec. ¶ 5. |
| 3. | Maximus's Overtime Policy provides that non-exempt employees receive overtime in accordance with federal and state wage and hour laws. | Williams Dec. ¶ 7, Exh. A. |
| 4. | Employees are responsible for accurately reporting all working hours on their timesheets, and that the timely and accurate submission of timesheets is critical. | Williams Dec. ¶ 7, Exh. A. |
| 5. | When employees receive their paycheck, they are required to verify immediately that they were paid correctly for all regular and overtime hours. | Williams Dec. ¶ 7, Exh. A. |
| 6. | California employees are required to take their first meal period by the end of their fifth hour of work. | Williams Dec. ¶ 8. |
| 7. | A second meal period is required if employees work more than ten hours, but they can only waive their second meal period if they work less than 12 hours in a shift. | Williams Dec. ¶ 8. |
| 8. | Employees are relieved of all duties during meal periods. | Williams Dec. ¶ 8. |
| 9. | Employees are entitled to one paid 15 minute rest break if they work a | Williams Dec. ¶ 9. |

1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| | shift longer than 3.5 hour, two paid rest breaks if they work a shift longer than six hours, and three paid rest breaks if they work a shift longer than 10 hours. | |
| 10. | Maximus trains non-exempt employees, including Plaintiff, to record all time worked, including overtime, and prohibits off-the-clock work. | Williams Dec. ¶ 10; Pl. Depo. 69:7-70:8; 81:2-6. |
| 11. | Maximus maintains a process for employees to report missed, late, or interrupted meal periods and rest periods, and employees are paid premiums when a qualifying exception is reported. | Williams Dec. ¶ 10; Pl. Depo. 81:9-25; 82:9-15. |
| 12. | On May 2, 2022, Maximus hired Plaintiff as an exempt Limited Service Full-Time Business Analyst out of Maximus's Folsom location. | Williams Dec. ¶ 11; Pl. Depo. 55:18-22. |
| 13. | As a Business Analyst, Plaintiff worked remotely from her residence. | Pl. Depo. 63:10-11. |
| 14. | Plaintiff was supervised in this position by Mai Vang until Plaintiff transferred to a position in the Call Center in November 2022. | Williams Dec. ¶ 11. |
| 15. | In both roles, Plaintiff was employed on an at-will basis. | Pl. Depo. 65:3-19. |
| 16. | On or about November 13, 2022, Plaintiff's position as a Business Analyst ended, and she was reassigned to work at Maximus's California Health West Division Call Center as a non-exempt Team Leader. | Williams Dec. ¶ 12. |
| 17. | Plaintiff worked in this position remotely. | Pl. Depo. 66:19-22. |
| 18. | In this position, Plaintiff's job duties included handling customer calls and providing relevant information. As a Team Leader, Plaintiff was supervised by Dion | Williams Dec. ¶ 12, Pl. Depo. 25:6-9. |

2

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| | Allen beginning in December 2022. | |
| 19. | Plaintiff was trained on the timekeeping process when she moved into the non-exempt Team Leader role. | Pl. Depo. 69:7-70:8. |
| 20. | Plaintiff understood she was to record all hours worked and report any missed or noncompliant meal periods through the established exception process. | Pl. Depo. 81:2-6, 9-25; 82:11-15. |
| 21. | Plaintiff admitted in her deposition that during her tenure as a non-exempt Team Leader, Plaintiff's meal and rest breaks were scheduled and she would clock out for the meal period by the time it was scheduled for her. | Pl. Depo. 81:19-25; 82:16-83:4. |
| 22. | On December 7, 2022, Plaintiff submitted a complaint through Maximus's Ethics Hotline portal against an IT Technician and Ms. Vang. | Williams Dec. ¶ 13, Exh. B. |
| 23. | Plaintiff's complaint was three–fold, alleging: 1 on or about September 15, 2022 the IT Technician changed Plaintiff's global password without her permission; 2 Ms. Vang ignored Plaintiff's reports of unprofessional conduct by the IT Technician; and 3 Ms. Vang questioned Plaintiff when she requested time off for voting. | Williams Dec. ¶ 13, Exh. B. |
| 24. | Within one week of receiving Plaintiff's complaint, Maximus initiated an investigation and the lead investigator Paula Hamilton interviewed Plaintiff. | Williams Dec. ¶ 13, Exh. B. |
| 25. | As part of its investigation into Plaintiff's claims, Maximus interviewed seven other Maximus employees, including Mai Vang. | Williams Dec. ¶ 13, Exh. B. |
| 26. | The investigation determined that the IT Technician followed | Williams Dec. ¶ 13, Exh. B. |

3

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|-----|------------------------------|---------------------|
|     | standard protocol when he temporarily reset Plaintiff's password and provided her a new laptop, resulting in an unsubstantiated determination. | |
| 27. | Maximus further determined Plaintiff's claim that Ms. Vang ignored reports of unprofessional conduct was unsubstantiated, as the employee in question had already received a verbal corrective action. | Williams Dec. ¶ 13, Exh. B. |
| 28. | With respect to Plaintiff's third claim, it was determined that Plaintiff was permitted to use PTO to vote in person on Election Day, consistent with Maximus's policy. | Williams Dec. ¶ 13, Exh. B. |
| 29. | Plaintiff produced a Teams chat from a December 19, 2022 meeting in which Mr. Allen advised that "Happy Holidays" is more appropriate for customer-facing communications. | Pl. Depo. 127:6-12, Exh. 12. |
| 30. | The chat confirms that Mr. Allen's guidance was directed at maintaining neutral, client-aligned communications—not at restricting Plaintiff's personal religious expression. | Pl. Depo. 127:6-12, Exh. 12. |
| 31. | Plaintiff was not disciplined for saying "Merry Christmas." | Pl. Depo. 33:5-10; 127:13-128:2. |
| 32. | Nor did she allege that any additional comments were made by Mr. Allen about religion after the December 2022 meeting and a follow-up call. | Pl. Depo. 33:11-16. |
| 33. | Maximus closed the investigation on January 20, 2023 and Ms. Hamilton informed Plaintiff of the outcome of the investigation on January 26, 2023, including that CDPH (the government client) expects employees to maintain neutral, secular with customers, which includes avoiding statements such as Merry Christmas. | Pl. Depo. 128:10-16, Exh. 13. |

4

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| 34. | Plaintiff testified that she was not aware of the investigation's results at the time they were communicated, but, after reviewing those results during her deposition, she stated that she was satisfied with Maximus's response. | Pl Depo. 104:16-105:10; 128:22-129:3. |
| 35. | On or about May 4, 2023, Plaintiff began a leave of absence due to a leg and hip injury and requested medical leave. | First Amended Complaint ¶ 16; Williams Dec. ¶ 14, Exh. C. |
| 36. | Maximus approved Plaintiff's request for a medical leave of absence through June 23, 2023. | First Amended Complaint ¶ 16; Williams Dec. ¶ 14, Exh. C. |
| 37. | Plaintiff subsequently requested extensions of her leave on June 24 and July 25, both of which Maximus approved. Plaintiff remained on approved leave through August 2023, when her position was eliminated. | Williams Dec. ¶ 15, Exh. D; Pl. Depo. 86:6-8. |
| 38. | As part of a company-wide reduction in force, Maximus eliminated Plaintiff's position and terminated her employment on August 4, 2023. | Williams Dec. ¶ 16. |
| 39. | Maximus's Human Resources department uses a standardized formula to determine RIF selections, based on a combined score of (1) retention credits derived from the employee's most recent annual performance rating and (2) service credits based on length of service. | Kenawell Dec. ¶ 3. |
| 40. | These criteria are established in advance and applied uniformly across the affected employee population. | Kenawell Dec. ¶¶ 2-4. |
| 41. | The RIF rankings were generated using only these objective inputs—performance and tenure—and did not include any fields for protected status, leave status, complaint history, religion, or disability. | Kenawell Dec. ¶¶ 2-4. |

5

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| 42. | Based on Plaintiff's performance rating and relatively short tenure, Plaintiff received a retention score that ranked the fifth lowest out of 133 employees. | Kenawell Dec ¶ 5, Exh. 2. |
| 43. | Plaintiff was among 53 Call Center employees in the California Health West Division recommended for termination in the August 2023 RIF, including six individuals in her same job position. | Kenawell Dec ¶ 5, Exh. 2. |
| 44. | Those responsible for applying and approving the RIF criteria did not consider Plaintiff's medical leave, any alleged disability, religion, or prior complaints in making the selection. | Kenawell Dec. ¶¶ 3-5. |
| 45. | Plaintiff admitted at deposition that she has no evidence that Maximus's decision to include her in the RIF was somehow unlawful. | Pl. Depo. 134:23-135:5. |
| 46. | Plaintiff cannot identify any discriminatory statements, actions, or conduct by any supervisor or decision-maker linking her religion or disability to the decision to terminate her employment. | Pl. Depo. 134:23-135:5. |
| 47. | The only adverse action Plaintiff is alleging is her termination of employment in August 2023. | First Amended Complaint ¶¶ 60 and 92. |
| 48. | Plaintiff admitted at deposition that she does not have any proof that she was terminated from her position other than for lack of work. | Pl. Depo. 134:23-135:5. |
| 49. | Plaintiff was selected for termination through a company-wide RIF that applied objective criteria across 133 ranked employees, and she ranked among the lowest based on performance score and tenure. | Kenawell Dec. ¶ 5. |
| 50. | The RIF criteria is fixed, uniformly applied, and does not include | Kenawell Dec. ¶¶ 2-3. |

6

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MOTION FOR SUMMARY JUDGMENT

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| | religion, disability, leave status, or complaint history. | |
| 51. | There is no evidence of discriminatory comments tied to the termination decision, no evidence of disparate treatment compared to similarly situated employees, and no evidence that the RIF criteria were manipulated or not applied consistently as to Plaintiff. | Kenawell Dec. ¶¶ 4-5. |
| 52. | There were no overrides or deviations from the formula for Plaintiff, and if available, the decision-makers applied the rankings mechanically. | Kenawell Dec. ¶ 5. |
| 53. | Plaintiff admits she has no evidence to dispute the stated reason for her termination or to suggest it was motivated by discrimination. | Pl. Depo. 134:23-135:5. |
| 54. | 53 employees in the division, including six in Plaintiff's same job position, were terminated under the same RIF. | Kenawell Dec. ¶ 5, Exh. 2. |
| 55. | Plaintiff claims that she was wrongfully terminated in retaliation for taking medical leave and making complaints of religious harassment and unpaid wages. | First Amended Complaint, ¶ 20. |
| 56. | Plaintiff admits she has no evidence that any protected activity was the reason why she was terminated from her position. | Pl. Depo. 134:23-135:5. |
| 57. | Plaintiff's performance review— the key input into the retention credit score—was completed in February 2023, more than two months before Plaintiff began her medical leave. | Kenawell Dec. ¶ 4, Exh. 1. |
| 58. | The termination decision itself was made pursuant to a RIF process that did not consider protected complaints or leave status. | Kenawell Dec. ¶ 3. |

7

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MOTION FOR SUMMARY JUDGMENT

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| 59. | The RIF rankings were generated mechanically based on each employee's performance score and length of service, with no individualized override as to Plaintiff and no input reflecting leave status, complaint history, religion, or disability. | Kenawell Dec. ¶¶ 3, 5. |
| 60. | The performance review underlying Plaintiff's ranking evaluates standard performance factors and contains no indication that her religion, alleged wage concerns, or any other protected activity played any role in determining her score. | Kenawell Dec. ¶ 4, Exh. 1. |
| 61. | Mr. Allen informed Plaintiff during a team meeting that she "should use Happy Holiday in a business setting" especially when speaking with a customer. | Pl. Depo., Exh 12. |
| 62. | Plaintiff admits that besides a call immediately after the team meeting where Mr. Allen allegedly reiterated what he communicated in the meeting, Plaintiff cannot recall any further communication with Mr. Allen about this issue. | Pl. Depo. 33:11-16. |
| 63. | After this communication with Mr. Allen, Plaintiff was not disciplined for saying Merry Christmas. | Pl. Depo. 33:5-10; 127:13-128:2 |
| 64. | Plaintiff is not aware as to whether Mr. Allen had similar conversations with other employees about their use of "Merry Christmas" as a greeting. | Pl. Depo. 128:3-7. |
| 65. | Maximus promptly investigated Plaintiff's complaint through its Ethics process, interviewed multiple witnesses, and communicated the outcome. | Williams Dec. ¶ 13, Exh. B; Pl. Depo. 128:10-16, Exh. 13. |
| 66. | Maximus granted all of Plaintiff's requests for leave and Plaintiff took all the leave she requested. | Pl. Depo. 93:1, 6-10; 97:3-6; 98:3-7; Williams Dec. ¶¶ 14-15, Exhs. C-D. |

8

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MOTION FOR SUMMARY JUDGMENT

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|-----|------------------------------|---------------------|
| 67. | Plaintiff's position was eliminated as part of a broader RIF that affected dozens of employees, including other Team Leaders, and not because she exercised CFRA rights. | Kenawell Dec. ¶ 5. |
| 68. | Plaintiff alleges that Maximus denied Plaintiff's request for reasonable accommodation by terminating Plaintiff's employment, in violation of Government Code Secs. 12926 and 12940. | First Amended Complaint ¶ 106. |
| 69. | Maximus approved Plaintiff's requests for medical leave for injury upon Plaintiff's request. | Pl. Depo. 93:1, 6-10; 97:3-6.; Williams Dec. ¶¶ 14-15, Exhs. C, D. |
| 70. | Plaintiff further alleges that Maximus failed to accommodate her religious beliefs by preventing her from saying "Merry Christmas" or "God bless" at work in violation of Government Code Secs. 12926 and 12940n. | First Amended Complaint ¶¶ 15, 72. |
| 71. | Maximus had a legitimate, client-driven requirement that customer-facing employees communicate in a neutral manner and avoid sectarian greetings when interacting with customers. | Pl. Depo. 127:6-12; 128:10-16, Exhs. 12, 13. |
| 72. | Maximus maintained written anti-discrimination, anti-harassment, and anti-retaliation policies; provided complaint channels; and promptly investigated Plaintiff's December 2022 complaint. | Williams Dec. ¶ 7, 13, Exhs. A, B. |
| 73. | Plaintiff alleges that Plaintiff's counsel requested a copy of Plaintiff's personnel file and payroll records on April 23, 2025. | First Amended Complaint ¶ 21. |
| 74. | Maximus has no record that any such request was received by Maximus on or around April 23, 2025. | William Dec. ¶ 17. |

9

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MOTION FOR SUMMARY JUDGMENT

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| 75. | Maximus received a request for Plaintiff's personnel file and payroll records on January 9, 2024 and timely responded to Plaintiff's counsel with the responsive documents on January 22, 2024 and January 29, 2024. | Williams Dec. ¶ 18, Exh. E. |
| 76. | Plaintiff alleges in her Complaint that she was not paid for approximately 20 hours of overtime per week for about six months while a non-exempt employee. | First Amended Complaint ¶ 13; Pl. Depo 54:11-19. |
| 77. | Plaintiff was trained that she was required to accurately record hours worked as an hourly employee. | Pl. Depo. 81:2-6. |
| 78. | Plaintiff admits that she was paid for all her work time: | Pl. Depo. 92:1-13. |
| 79. | Plaintiff further alleges that, contrary to Maximus's established policies and practices, she was not provided her legally required 30-minute meal periods or 10-minute rest breaks. | First Amended Complaint ¶ 12. |
| 80. | Plaintiff was required to record any deviations from her scheduled meal and rest breaks on an exception sheet. | Pl. Depo. 81:9-25; 82:11-15. |
| 81. | She admitted that when she was unable to take a scheduled meal period, "that information is captured in the exception report that was required to submit on each occurrence." | Pl. Depo. 83:19-84:1. |
| 82. | Plaintiff would clock out for her scheduled meal period and take at least 30 minutes for her meal period. | Pl. Depo. 82:23-83:4 |
| 83. | During her meal periods Plaintiff leaves her computer to handle personal matters or eat. | Pl. Depo. 83:5-18. |
| 84. | Maximus maintained a mechanism to report those deviations and | Williams Dec. ¶ 10; Pl. Depo. 81:9-25; 82:9-15. |

10

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| | Plaintiff knew how to use it, and in fact submitted the exceptions. | |
| 85. | Plaintiff alleges that she incurred expenses for internet and electricity and used her own tools and equipment for which she was not reimbursed. | First Amended Complaint ¶ 14. |
| 86. | While working for Maximus, Plaintiff purchased her own computer, as well as the related equipment, because she did not have one to use at home. | Pl. Depo. 70:24-71:5, 13-23; 72:10-24. |
| 87. | Plaintiff used the computer for her own personal purposes while working for Maximus and still uses it at her home to this day. | Pl Depo. 72:25-73:21. |
| 88. | Any computer purchase was for a device Plaintiff also used for personal purposes and continues to use, and the record reflects that Maximus provided Plaintiff with a laptop during her employment. | Pl. Depo. 70:9-17. |
| 89. | Plaintiff automatically received monthly expense reimbursements for internet use for a portion of her employment. | Pl. Depo. 85:7-17. |
| 90. | Prior to the automatic payments, Plaintiff did not submit any requests for the reimbursement of internet, electricity, or computer expenses. | Pl. Depo. 71:6-8; 76:24-77:2. |
| 91. | Neither Mr. Allen nor the HR representatives who made the termination decision regarding the employees at the Health West Division Call Center were a managing agent, officer, or director of Maximus, and they lacked authority to set corporate policy for a substantial portion of the company. Mr. Allen managed Team Leaders and Customer Service Representatives at Maximus's California Health West Division Call Center. The HR representatives who made the | Williams Dec. ¶ 19. |

11

326328468v.1

| No. | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
|  | termination decisions were responsible for ensure compliance with labor laws, maintaining employee records, and supporting Maximus's daily administrative HR functions. |  |
| 92. | Plaintiff has made no attempt to search for employment after her separation. | Pl. Depo. 16:23-25; 44:5-6; 47:19-23; 48:7-10. |
| 93. | Plaintiff has not been physically able to work and has not been released to work by a physician. | Pl. Depo. 16:15-17; 42:14-16; 47:24-48:2. |
| 94. | Plaintiff never sought counseling or therapy for emotional distress issues, and did not recall taking any medications for emotional distress since her employment with Maximus ended. | Pl. Depo. 20:14-20; 39:24-40:2; 40:12-14. |

DATED:  June 4, 2026                    SEYFARTH SHAW LLP

By:   */s/ Ryan McCoy*
          Ryan McCoy
          Reiko Furuta
     Attorneys for Defendant
     MAXIMUS CONSULTING SERVICES, INC.

12

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS ISO MOTION FOR SUMMARY JUDGMENT

326328468v.1