Edward Antonino, Esq. (SBN 213908)
LAW OFFICE OF EDWARD ANTONINO
15760 Ventura Blvd., Suite 700
Encino, CA 91436
Telephone: (818) 995-9477
Email: ea@ca-workers-rights.com

Attorneys for Plaintiff
AUDREA BARNES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREA BARNES, <br><br> Plaintiff, <br><br> v. <br><br> MAXIMUS CONSULTING SERVICES, INC.; and DOES 1 through 30; inclusive, <br><br> Defendants. | **CASE NO. 25–2108** <br><br> [Assigned to the Hon. Kenly Kiya Kato, Courtroom 3] <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF AUDREA BARNES; DECLARATION OF EDWARD ANTONINO, ESQ.** |

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Plaintiff Audrea Barnes ("Plaintiff") submits this Opposition to Defendant Maximus Consulting Services, Inc.'s ("Maximus" or "Defendant") Motion for Summary Judgment.

## FACTUAL BACKGROUND

Plaintiff was hired by Maximus in May 2022 as a Business Analyst, and she later became an hourly, non-exempt Team Leader. She began a medical leave of absence in May 2023, and was terminated in August 2023.

As alleged in her First Amended Complaint, although the Plaintiff was forced to work at least 8 hours per workday, she was not provided her legally-required 30-minute meal breaks nor all of her legally-required 10-minute rest breaks, as she was not free to leave the work area, and/or she was not completely relieved of all job duties during her attempted breaks.

Moreover, during Plaintiff's employment with Defendant, she was not compensated at all for approximately 20 hours of overtime hours per week during a span of about 6 months.

Furthermore, although Plaintiff was forced to use her own tools and equipment, and incur expenses for internet, electricity, etc., she was not reimbursed for these necessary business expenses.

Additionally, Plaintiff is a Christian. During her employment with Defendant, she was disciplined when she said "Merry Christmas" and "God bless" while at work and was reprimanded for the same by Supervisor Dion Allen at a staff meeting.

On or about May 4, 2023, Plaintiff injured her left knee and left hip and thereafter took a 3-month medical leave through on or about August 4, 2023.

Plaintiff complained by phone, email, team chat, text messages and Defendant 's internal online computer program to Manager Dion Allen, Mai Vang (Manager and Director in the IT Department), Chief Compliance Officer Julie Wheat, Human Resources Director Ruby Williams, Internal Investigator Paula

Hamilton, and outside ethics investigating company NOVAX concerning not being paid for all hours worked and for religious harassment.

Additionally, Plaintiff's superior Mai Vang sent to Plaintiff a Human Resources policy dated January 29, 2007 (Reference Number EM.5.3.4) established about 17 years ago, wherein the policy stated that Plaintiff was not permitted to take off work to vote during work hours, and that either she could vote before work or after work hours. A new voting policy was created by Governor Newsom in 2022, which Mai Vang was aware of. Plaintiff requested to vote in person on November 3, 2022, but Mai Vang fought Plaintiff over the phone and in writing. At that time, Plaintiff was a salaried employee working 12 to 17 hours per day, but Ms. Vang told Plaintiff that she should vote via U.S. mail like she does. Plaintiff however had issues with voting early in the day or late at night because: it turns dark at 4:45 p.m. in the desert during the Fall season where she lives; Plaintiff is a disabled person walking with a cane; coyotes are abundant where Plaintiff lives near the mountain foothills and pose a danger to her after dark; and Plaintiff was concerned for her safety after dark from humans and wild animals parking far away city blocks from the voting place. Plaintiff therefore contested that she should have been given two hours of comp time and not be forced to use her vacation time. Plaintiff's phone conversation with Mai Vang was unpleasant because she was adamant in not allowing Plaintiff to take off work to go vote.

Plaintiff reported her civil rights violations, including: violation of her religious rights, voting intimidation rights, and employee sabotage complaints to: Nicole Frias (Director of Global Ethics & Compliance, Julie Wheat (Global Ethics & Compliance), Paula Hamilton (Global Ethics and Compliance Lead Investigator), in writing to the American Civil Liberties Union (ACLU) (Record No. 241689-BBT, filed on 1-3-2023), to Investigator Joy Hyatt (202) 307-3109 at the Department of Justice in Washington, D.C. (for a voting rights violation - file no.: 244200 TJC, in writing to Navex (an external company that provided Defendant

3

services in areas of governance, risk, and compliance management solutions, offering software and services to help organizations manage risks, comply with regulations, and maintain ethical practices) via Report No: 278792792601.

Ultimately, on or about August 4, 2023, Plaintiff's employment with Defendant was wrongfully terminated in retaliation for her requesting and taking medical leave, in retaliation for her complaints of harassment based on her religious beliefs, and in retaliation for her complaints of unpaid wages.

On or about April 23, 2025, Plaintiff's counsel requested a copy of Plaintiff's personnel file and payroll records, along with a signed Authorization for the release of the same. However, the requested records were not produced.

Additionally, Defendant caused Plaintiff to not get long-term disability benefits because Defendant lied to MetLife Insurance company about Plaintiff's illness as Defendant told MetLife Insurance Company to not pay for her long-term disability even though long-term disability insurance premiums were deducted from Plaintiff's payroll check on a bi-weekly basis. Plaintiff had been deemed disabled by an Orthopedic surgeon with a California Continuing Medical Education credential designation, which said credential allows Plaintiff's doctor to testify in CA court as an expert witness. MetLife told Plaintiff they must obey and honor Defendant's orders to NOT pay Plaintiff for long-term disability event though Plaintiff's short-term disability ran out after six (6) weeks. Defendant also told the State of CA Disability Division that she was not disabled because Supervisor Dion Allen told Defendant's Human Resources Department that she was not ill in April 2023 even though Plaintiff was disabled with the COVID-19 disease with associated complications as she experienced long-haul ailments from the disease. Plaintiff sent Maximus' Human Resources a physician statement certifying her COVID-19 illness. Also, the State of CA Infectious Disease Department called Plaintiff at home regarding her infectious disease and illness, and gave her instructions on what to do to rid the disease from her body. Further, COVID-19 was

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

certified as a major illness on or about March 4, 2020 ended in about June 2023, so Plaintiff was in a protected class due to her disability. Plaintiff therefore believes and contends that the false reporting by Supervisor Dion Allen to Defendant's Human Resources was a blatant, intentional lie. And although Plaintiff provided doctor's notes to Defendant's absence team, Plaintiff's doctor's notes were not considered to be credible. Furthermore, Defendant's Human Resources Department reported false information to the State of CA Disability Department, and Defendant withheld Plaintiff's wages even though she had available paid time off (PTO) and available sick time.

## LEGAL AUTHORITY

Summary judgment is appropriate against a party only if it cannot "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323- 24 (1986).

## DISCUSSION

### A. Plaintiff's Discrimination Claims

Plaintiff's seventh and tenth causes of action are for religious and disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"). Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the employer may rebut the presumption of discrimination by producing evidence that an adverse employment action was taken for a legitimate, non–discriminatory reason. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, at 355- 56 (2000).

### 1. Prima Facie Burden

To establish a prima facie case of discrimination, a Plaintiff must establish (1) she was the member of a protected class (check); (2) she had a satisfactory job performance (check); (3) she suffered an adverse employment action (check); and

5
**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

(4) a discriminatory motive (check). See *Crisanto v. Cnty. of Tulare*, 2015 WL 7188165, at *3 (E.D. Cal., 2015).

Here, the discriminatory motive may be inferred based on Maximus' termination of Plaintiff's employment because of Plaintiff's earlier complaint of discrimination based on her religion and for taking a reasonable medical leave of absence based on her disability.

### 2. Triable Issue As To Pretext

Plaintiff has alleged that her termination based on Reduction in Force was a pretext, and that the actual discriminatory motive for her termination was due to her earlier complaint of discrimination based on her religion and for taking a reasonable medical leave based on her disability just 3 months earlier.

Therefore, a reasonable jury could conclude that Maximus' stated reason was a cover / pretext for discrimination.

### B. Plaintiff's Retaliation Claim

Plaintiff claims that she was wrongfully terminated in retaliation for taking medical leave and for making complaints of religious harassment and unpaid wages. To state a prima facie case of retaliation, Plaintiff must show: (1) she engaged in a protected activity; (2) the employer subjected her to an adverse employment action; and (3) there was a causal connection between the two. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

Here, Plaintiff has satisfied all three elements.

Therefore, a reasonable jury can infer and conclude that her protected activity was a substantial motivating factor in the decision to terminate her employment.

### C. Plaintiff's Harassment Claim

To prevail on Plaintiff's religious harassment claim, Plaintiff must show that: (1) she was an employee of Maximus; (2) that Plaintiff was subjected to harassing conduct because of her religion; (3) that the harassing conduct was severe **or** pervasive; (4) that a reasonable person in Plaintiff's circumstances would have

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive; (5) that Plaintiff considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive; (6) that a supervisor engaged in the conduct; (7) that Plaintiff was harmed; and (8) that the conduct was a substantial factor in causing Plaintiff's harm. Gov. Code § 12940(j)(1).

Here, Mr. Allen disciplined Plaintiff for saying "Merry Christmas" at work and all other requirements have been met.

Therefore, a reasonable jury may conclude that Plaintiff was harassed based on her religion.

### D. Plaintiff's Violation of CFRA Rights Claim

Plaintiff can prove violation of her CFRA rights because Maximus denied and interfered with her ability to take / extend her medical leave. Maximus denied a few of Plaintiff's requests for extension of leave. See Barnes Declaration.

Additionally, Plaintiff has alleged that Maximus violated her CFRA rights by terminating her employment rather than returning her to her position.

Therefore, a reasonable jury may conclude that Plaintiff's CFRA rights were violated.

### E. Plaintiff's Failure to Accommodate and Failure to Engage in the Interactive Process Claims

#### 1. The Disability Accommodation and Interactive Process Claims

Plaintiff alleges that Maximus denied Plaintiff's request for reasonable accommodation by terminating Plaintiff's employment, in violation of Government Code sections 12926 and 12940.

A reasonable jury may conclude that Maximus failed to accommodate Plaintiff's disability as her requests for extension of disability leave were denied on several occasions. See Barnes Declaration.

#### 2. The Religious Accommodation Claim

Plaintiff has further alleged that Maximus failed to accommodate her

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

religious beliefs by preventing her from saying "Merry Christmas" or "God bless" at work in violation of Government Code Secs. 12926 and 12940(n).

Plaintiff has established a prima facie case: that Plaintiff held a bona fide religious belief that the employer was aware of and that conflicted with an employment requirement. Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." Bolden-Hardge, 63 F.4th at 1224.

Here, Maximus prohibited Plaintiff from sectarian greetings such as "Merry Christmas" and "God bless" even as to her communications with her coworkers, and reprimanded her for doing so. See Barnes Declaration.

A reasonable jury may therefore conclude that Maximus failed to accommodate Plaintiff's religious beliefs.

**F. Plaintiff's Failure to Prevent Harassment, Discrimination and Retaliation and Wrongful Termination Claims**

Here, a reasonable jury can conclude that Plaintiff was harassed based on her religion as she was prohibited as a Christian from simply saying "Merry Christmas" and "God bless" and she was further wrongfully terminated in retaliation for her (1) complaints of harassment based on her religion, (2) for her requests and for taking disability leave, and (3) for her complaints of labor law violations, and Maximus therefore failed to prevent retaliation pursuant to the same.

**G. Plaintiff's Failure to Produce Personnel File and Payroll Records Claim**

Plaintiff's counsel requested a copy of Plaintiff's personnel file and payroll records on April 23, 2025. See Declaration of Edward Antonino, Esq., which includes a copy of the same.

Therefore, as Plaintiff has already alleged that Defendant failed to produce a

8

copy of the same, and as Defendant has already admitted that it didn't produce a copy of the same, a reasonable jury can conclude that Maximus not only received the communication requesting said records, but also failed to produce the requested records.

### H. The Labor Code Wage Claims

### 2. Plaintiff's Meal Break and Rest Break Claims

Plaintiff has further alleged that she was not provided her legally required 30-minute meal breaks or 10-minute rest breaks.

### 3. Plaintiff's Expense Reimbursement Claim

Plaintiff has further alleged that she incurred expenses for internet and electricity and used her own tools and equipment for which she was not reimbursed. Employers must reimburse "all necessary expenditures or losses" incurred by an employee arising directly from the "discharge of his or her duties." Labor Code, § 2802(a). To establish this claim, Plaintiff must show she: "(1) … made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of [her] discharge of her … duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." Cassady v. Morgan, Lewis & Bockius LLP, 145 Cal. App. 4th 220, 230 (2006).

While working for Maximus, Plaintiff purchased a computer and the related equipment and further was charged for internet use for a portion of her employment which was not reimbursed. See Barnes Declaration.

### 4. Plaintiff's Derivative Wage Statement, Waiting Time, and Unfair Business Practices Claims

First, Plaintiff claim for Unfair Business Practices is not solely derivative of any alleged labor law violations, but also rests on Plaintiff's FEHA claims.

Second, since Plaintiff can prevail on the underlying wage and hour claims, Plaintiff's claims for failure to produce accurate, itemized wage statements, waiting time penalties, and Unfair Business Practices claims may also prove successful.

9

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

### I.      Plaintiff's Punitive Damages Claim

To pursue recovery for punitive damages, a Plaintiff must present evidence of "oppression, fraud, or malice." Civil Code § 3294(b).

Even if punitive damages are available only where the challenged employment action was committed, authorized or ratified by an "officer, director, or managing agent", Plaintiff here has alleged that the offensive and malicious conduct was performed by her supervisor Ms. Vang, Mr. Allen, Human Resources representatives, and that her employment was terminated by Maximus' management.

Plaintiff's punitive damages claim should therefore be permitted to go forward.

### J. Plaintiff's Damages Claims

Although Plaintiff she never sought counseling or therapy for emotional distress issues, a reasonable jury may find Maximus liable for emotional distress damages, as she did not have the financial resources after losing her job to seek such treatment.

### CONCLUSION

Plaintiff therefore requests that the Court deny Defendant's Motion for Summary Judgment in its entirety, or alternatively, only grant partial summary judgment.

DATED: June 11, 2026          LAW OFFICE OF EDWARD ANTONINO

By: /s/ Edward Antonino
Edward Antonino, Esq.
Attorneys for Plaintiff
AUDREA BARNES

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

## DECLARATION OF AUDREA BARNES

I, Audrea Barnes, declare as follows:

1.      I am a party to this action and a competent individual over the age of eighteen years. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently thereto.

2.      I have never seen a Maximus Call Center as I worked from home, so I am unsure and unaware of what discussions were made at its Call Centers.

3.      Maximus apparently conflates its purported written "Overtime Policy" with the actual policy that it implemented as it failed to provide me with overtime compensation when I changed to an hourly non-exempt position on 11/14/22.

4.      Maximus did not want its Call Center employees logging overtime from lunch and breaks on their timesheets. They created about seven (7) different internal online forms to log exception reporting overtime.  Maximus designed these online forms to populate as an input and an employee could not print these forms because they were forms to be submitted online for internal use and records.

5.      I was not required to immediately verify that I was paid correctly for all regular and overtime hours.

6.      Employers must make a 30-minute meal break available to non-exempt employees. Several times supervisors at Maximus told its employees including me to not get off a call with a customer / client until it was completed. Maximus did not inform me that I could transfer the call to one of my coworkers and neither did my supervisor ever volunteer to complete my calls if the time encroached upon my meal breaks according to CA labor laws. This happened to me on numerous occasions. I couldn't report the same on my time card, and was told to fill out a form online (an exception form) and submit it internally.

7.      Maximus deviated from this rule several times as its employee Naajia Khan was allowed to skip meal breaks quite often. She worked 12-hour shifts without meal breaks. Her Supervisor Carrie bent the rules often. She told me to

11

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

work through my breaks to finish scheduling patients, immediate family members, and extended family members for vaccination appointments.

8.    I worked from home and cannot attest of other employees' assignments during their meal breaks. However, Mai Vang encroached on my meal breaks on several occasions when I worked for Maximus as a Business Analyst, and she had no regard for personal time even though I was ordered by my doctor to take medicine on a regular basis. I couldn't take a meal break until I had completed my calls with customers / clients and I was unable to transfer the calls to other workers for assistance as I worked as a Phone Representative.

9.    On a weekly basis, Mai Vang told me that she was an exempt employee, NOT an hourly employee, and that I was expected to do what it took to complete my assignments on time, even if it took working beyond my assigned work shift and on the weekends, and I was therefore not told to record all my working hours.

10.    I was NOT paid any premiums even though I had reported exceptions.

11.    I am unsure of the location Maximus hired me from, and I never visited Folsom, CA, but I was informed that Maximus' headquarters were in McLean, VA.

12.    I never worked at the Maximus Call Center as a Maximus employee before November 14, 2022. I was never an employee of Maximus as a Phone Lead nor Representative in the Phone Center. November 14, 2022 was my first day as a Phone Center Team Leader in the Maximus Phone Center.

13.    My meal and rest breaks weren't always scheduled as I at times was unable to take a break as evidenced by the exception reporting forms I submitted while working for Maximus, as well as me having to sign in and out of the queue electronically under my Operating I.D. 372455.

14.    The Team chat communications and conversations are evidence of my back-and-forth communications with Ms. Vang, as well as the phone call and what

12

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

was said concerning my request to exercise my right to vote. My phone call to Mai Vang concerning Mr. Profitt's behavior was made on my personal mobile phone. When Mai Vang said she did NOT want to hear my complaint, I started generating emails documenting the conversation and describing Mr. Profitt's unprofessional behavior towards me at the workplace.

15. I have no information concerning the timeline as to when my complaint was first investigated.

16. I have no information concerning how many, if any, employees of Maximus were interviewed.

17. I produced documents of a conversation and reprimand in Maximus' Teams Chat communications systems which stated that I should not use the phrase "Merry Christmas" at the workplace, even though other supervisors and employees were permitted to say the same. I was further prohibited from saying the same to my coworkers or permitted to respond in kind over the phone to clients. I produced several screenshots in discovery from other Maximus employees exercising their religious rights, but Mr. Allen denied my freedom to practice my religious beliefs at Maximus.

18. Mr. Allen reprimanded me and said that I could not use the phrase "Merry Christmas" or "God bless" at the workplace.

19. I was disciplined when Mr. Allen instructed me not to say "Merry Christmas" or "God bless". The Teams Chat conversation between me and Mr. Allen clearly shows that I was reprimanded for saying "Merry Christmas" to my coworkers.

20. My coworkers and management were permitted to say "Merry Christmas".

21. I was unaware of ALL the things Maximus did. Some things I was told happened seemed fair. However, I don't believe the persons in my work unit, including supervisors, were reprimanded because the terms/phrases "God", "God

13

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

bless you", and "Merry Christmas" in their communications in the Teams Chat environment went on until the New Year 2023. I provided screen shots of credible evidence showing the ongoing communications and well wishes during the holiday season by my coworkers. My East Indian coworkers wished me and others a happy "Diwali and Dussehra", and my Jewish coworkers the same for "Hannaka, Rosh Hashanah".

22.     On several occasions, my supervisor Dion Allen at Maximus denied my requests for extensions of disability leave.

23.     Skills aptitude tests were given to Maximus' employees work unit without Human Resources' knowledge and approval as management claimed that they wanted to know the employees' skill levels and that this testing would help with the training and development of its employees.

24.     Several of my performance evaluations by Dion Allen were not truthful.

25.     Maximus is apparently conflating the phrase "adverse action" with "retaliation" as I am not only alleging a wrongful, retaliatory termination, but I am also alleging that I was harassed and discriminated against based on my religion and disability, for claiming wage and hour violations, etc.

26.     My Teams Chat documentation shows preferential treatment to others who are NOT Christians who wish their coworkers Happy Hannaka, Passover, Dwali, etc.

27.     My screen shots of Teams Chat messages that I produced in discovery evidence that my employment was terminated due to my religion and/or in retaliation for my complaints of religious harassment.

28.     My leave was denied and miscalculated supposedly due to computer error in Maximus' computer system according to Shirley, an employee on the Absence Team in about June 2023.

29.     I was compensated for all of my regular / straight time, but I was not

14

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

compensated for my overtime hours worked and also not compensated for my hours worked on the weekends, before the start of my shift, nor after my shift ended.

30. I was not provided all of my legally-required 30-minute meal periods and 10-minute rest breaks.

31. I was only required to record any deviations from my scheduled meal and rest breaks on Maximus' computer-generated exception sheet, not on my payroll timesheet.

32. Reimbursement for internet charges did not begin until around the first quarter of 2023.

33. Once I returned Maximus' computer and was given criteria for equipment approved to use in the phone center, I had to purchase a computer and equipment to meet Maximus' computer and accessory requirements as I had outdated computers at home that were NOT compliant and which were faulty.

34. I did not use the computer I purchased for work as I have several working computers in my home which I used for personal purposes.

35. I had other personal computers and tablets, cell phones in my home for personal use during my employment at Maximus, and only used those separate personal items for personal purposes.

36. I never sought counseling or therapy for emotional distress issues as I did not have the financial resources after losing my job to seek such treatment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 11, 2026.

DocuSigned by:

*Audrea Barnes*
CAE4C0E57C7747F...

Audrea Barnes

15

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

## DECLARATION OF EDWARD ANTONINO, ESQ.

I, Edward Antonino, Esq., declare as follows:

1. I am counsel for Plaintiff in this action and the sole proprietor of the LAW OFFICE OF EDWARD ANTONINO and a competent individual over the age of eighteen years. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently thereto.

2. On April 23, 2025, I drafted and sent a letter to Maximus on Plaintiff's behalf wherein I requested a copy of Plaintiff's personnel file and payroll records, along with a signed Authorization for the release of the same. Attached hereto as Exhibit A is a true and correct copy of the same.

3. As of this date, Defendant Maximus has failed to produce a copy of Plaintiff's personnel file and payroll records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 11, 2026.

_____
Edward Antonino, Esq.

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT A



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information. visit our website at *www.usps.com*.

McLean, VA 22102

| | |
|---|---|
| Certified Mail Fee $4.85 | |
| $ | $0.00 |
| Extra Services & Fees (check box, add fee as appropriate) | $0.00 |
| ☐ Return Receipt (hardcopy) $ | $0.00 |
| ☐ Return Receipt (electronic) $ | $0.00 |
| ☐ Certified Mail Restricted Delivery $ | $0.00 |
| ☐ Adult Signature Required $ | $0.00 |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $2.59 | |
| $ | |
| Total Postage and Fees $7.44 | |
| $ | |

Postmark Here

04/23/2025

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, January 2023                    See Reverse for Instructions

# LAW OFFICE OF EDWARD ANTONINO

15760 Ventura Blvd., Suite 700, Encino, CA 91436
Phone: (818) 995-9477
email: ea@ca-workers-rights.com

April 23, 2025

**_Via Certified Mail_**

_Evidence Code § 1152_

Maximus Consulting Services, Inc.
1600 Tysons Blvd., 14th Floor
McLean, VA 22102

Re:   **Audrea Barnes**

Please be advised that my firm has been retained by Audrea Barnes ("my client") and that my firm maintains a lien concerning my client's claims against Maximus Consulting Services, Inc. ("the Company") for:

1. Failure to Provide Legally-Required 30-Minute Meal Periods
2. Failure to Provide Legally-Required 10-Minute Rest Breaks
3. Failure to Pay All Hours Worked (Including Overtime and Double Time)
4. Failure to Pay Waiting Time (Wage Continuation) Penalties
5. Failure to Provide Accurate, Itemized Wage Statements
6. Failure to Reimburse Business Expenses
7. Religious Harassment
8. Failure to Accommodate Religious Beliefs
9. Violation of FMLA / CFRA Protected Leave
10. Disability / Medical Condition Discrimination
11. Failure to Engage in the Interactive Process
12. Failure to Accommodate Disability
13. Failure to Take Reasonable Steps to Prevent Harassment and Retaliation
14. Retaliation
15. Wrongful Termination
16. Unfair Business Practices

As a result of my investigation, it is my position that my client has been a victim of the Company's breach of its statutory obligations resulting in violation of my client's rights. The Company has incurred significant liability for my client's economic loss and emotional distress resulting from the Company's actions, as outlined below.

## Facts of My Client's Case

My client worked for the company as a Business Analyst and Leader from on or about May 2, 2022 to on or about August 4, 2023.

April 23, 2025
Page 2

Although my client was forced to work at least 8 hours per workday, she was not provided her legally-required 30-minute meal breaks nor all of her legally-required 10-minute rest breaks, as she was not free to leave the work area, and/or she was not completely relieved of all job duties during her attempted breaks.

Moreover, during my client's employment with the company, she was not compensated at all for approximately 20 hours of overtime per week during a span of about 6 months.

Furthermore, although my client was forced to use her own tools and equipment, and incur expenses for internet, electricity, etc., she was not reimbursed for these necessary business expenses.

Additionally, my client is a Christian. During her employment with the company, she was not permitted to say "Merry Christmas" or "God bless" while at work and was reprimanded for the same by her supervisor Dion Allen at a staff meeting.

Then, on or about May 4, 2023, my client injured her left knee and left hip and thereafter took a 3-month medical leave through on or about August 4, 2023.

My client complained by phone, email, team chat, text messages and the company's internal online computer program to Manager Dion Allen, Ethics Director Mai Vang, Chief Compliance Officer Julie Wheat, Human Resources Director Ruby Williams, Internal Investigator Paula Hamilton, and outside ethics investigating company NOVAX concerning not being paid for all hours worked and for religious harassment.

Ultimately, on or about August 4, 2023, my client's employment with the company was wrongfully terminated in retaliation for her requesting and taking medical leave, in retaliation for her complaints of harassment based on her religious beliefs, and in retaliation for her complaints of unpaid wages.

## Failure to Provide Legally-Required 10-Minute Rest and 30-Minute Meal Periods

California law requires employers to provide employees with 10-minute rest breaks per four hours of working. Cal. Code Regs., tit. 8, § 11040, (11)(A). California law also requires employers to provide employees with 30-minute meal breaks after each consecutive five hours of working, and a second meal period of not less than 30 minutes for a work period of more than 10 hours per day". Labor Code § 512(a); Cal. Code Regs., tit. 8, § 11040, (11)(A).

The California Supreme Court has held that an employee must be *completely relieved of duties* during these breaks. See *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1037 ("Employers must afford employees uninterrupted half-hour periods in which they are relieved of any duty or employer control and are free to come and go as they please"). This means that an employer *cannot require an employee to be on-call* during their meal periods. *See, e.g., Augustus v. American Commercial Security Services*, 2012 WL 3758467 (Jul. 6, 2012). Employers thus must pay employees for all work performed as on-call duties. *Id.*

California's Labor Commissioner, Division of Labor Standards Enforcement and our Supreme Court have also held that an employer's requirement that an employee *remain on the premises* during his meal period is a violation of the Labor Code's meal period requirement. *See* DLSE Opinion Letter Re: Whether Meal Periods During Which Employees Are Restricted to Their Employer's Premises Constitute Hours Worked, January 12, 2001, 2001 Cal. DLSE LEXIS 5, 1 ("[A]ny time during which an employee is prohibited from leaving his or her employer's premises constitutes "hours worked" under California law, and that such employees are entitled to compensation for those hours worked."). *Mendiola v. CPS Security Solutions, Inc.* 60 Cal. 4th 833 ("[W]hen an employer directs, commands or restrains an employee from leaving the work place … and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control. According to [the definition of hours worked], that employee must be paid.") (internal quotations omitted).

My client was not provided with legally required meal and rest periods, in violation of applicable Industrial Welfare Commission Orders, California Code of Regulations, Title 8, Chapter 5, § 11070, and California Labor Code §§ 226.7, 512, and 558. For the company's failure to provide breaks, an employee is entitled to one (1) hour of pay at the employee's regular rate of compensation for each day that a meal period was not provided, and an additional one (1) hour of pay at the employee's regular rate of compensation for each day that a rest period was not provided. Labor Code §226.7.

## Failure to Pay All Hours Worked Including Overtime and Double Time Compensation

An employee must be paid overtime (at 1.5 times the regular rate of pay) after working 8 hours in a workday (Labor Code § 510) or 40 hours in a workweek, and 2.0 times the regular rate of pay after working 12 hours in a workday. (Labor Code § 510; Industrial Welfare Commission ["IWC"] wage orders).

## Failure to Pay Waiting Time (Wage Continuation) Penalties

Labor Code § 201 states, "[I]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

Labor Code § 202 states, "[I]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

Labor Code § 203 states that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by sections 201 and 202, then the employer is liable for penalties in the form of continued compensation up to thirty (30) work days.

Here, my client was not paid all wages earned during my client's employment, including but not limited to waiting time hours. Further, my client was not paid all wages owed at the time of termination and/or within 72 hours of my client's resignation of employment. Further, such

failure to pay wages due and owing was willful, and done with the wrongful and deliberate intention of depriving my client of monies earned and in conscious disregard of my client's rights.

## Failure to Provide Accurate, Itemized Earnings Statements

Labor Code § 210 provides, that in addition to the other penalties provided by the Labor Code, every person who fails to pay the wages of each employee as provided in Section 204, shall be subject to a civil penalty as follows: (a) For any initial violation, $100.00 for each failure to pay each employee, (b) For each subsequent violation, or any willful or intentional violation, $200.00 for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Labor Code § 226(a) states: "Every employer shall . . . at the time of each payment of wages, furnish his or her employees . . . an itemized statement in writing showing (1) gross wages earned; (2) total hours worked by the employee . . . (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis . . . ." Labor Code § 226(e) states: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) shall be entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and shall be entitled to an award of costs and reasonable attorney's fees."

Labor Code § 226.3 provides for a $250 penalty per employee for the first citation and $1,000 per employee for each subsequent citation for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. The civil penalties provided for in this section are in addition to any other penalty provided by law.

Labor Code § 558 provides a civil penalty of $50.00 for any period in which an employee is underpaid, and $100.00 per employee for every subsequent violation, plus an amount sufficient to recover the underpaid wages. This amount is to be assessed *in addition to* the unpaid wages, and is recoverable, as is Labor Code §204, under Labor Code §2699.

Here, my client was damaged because, among other things, the above-cited failures hindered my client from determining the amounts of wages actually owed. Further, because the company failed to pay for waiting time hours worked, the company has also failed to provide accurate, itemized statements of all such earnings.

## Failure to Reimburse Business Expenses

Labor Code § 2802 provides: "(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

April 23, 2025
Page 5

## The Company is Vicariously and Strictly Liable

The statutory definition of 'employer' includes persons 'acting as agent of the employer' (Government Code § 12926 (d)). But this was intended 'to ensure that *employers* will be held liable if their supervisory employees take actions later found discriminatory.' *Reno v. Baird*, 18 Cal.App.4th at 647 (emphasis added); *Janken v. GM Hughes Electronics*, supra, 46 Cal.App.4th at 66.

A "supervisor" for FEHA purposes is "*any individual* having the authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them, or to adjust their grievances, or effectively to recommend that action, if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment" (emphasis added). (*Government Code* §12926(r).)

Under FEHA, an employer is strictly liable for its supervisor's acts of harassment. Government Code §12940(j)(1); 2 *Cal. Code Regs.* §7286.6(b); *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1136. The employer's strict liability arises regardless of employer's own lack of knowledge or its attempts to remedy the situation, such as by publishing a policy against sexual harassment (See Government Code §12974(a)(1); *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1002.)

## Religious Harassment in Violation of FEHA

California's Fair Employment & Housing Act is to "be liberally construed and applied to promote its underlying purposes." Government Code §12603. In FEHA, the Legislature has declared, as a matter of public policy, the need to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination. Government Code § 12920. Section 12920 further provides, in pertinent part: "It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general."

Pursuant to Government Code §§12940(a), "It is an unlawful employment practice...for an employer, because of the religious creed... of any person, ...to discharge the person from employment ...or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

## Failure to Accommodate Religious Beliefs

Under FEHA, an employer must: "Explore any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with his or her religious belief or observance or permitting those duties to be performed at another time or by another person."

The California Workplace Religious Freedom Act of 2012 mandates that employers must accommodate religious beliefs and observances when it is reasonably possible, as long as it does not impose an undue hardship on the operation of the business.

Reasonable accommodation in California also includes job modifications that enable religious employees to exercise their beliefs. This can include scheduling changes for religious observances or holidays or allowing workers to pray at work during a break, in a private area or at regular intervals throughout the day. California employers must provide a reasonable accommodation if an employee is unable to work on a certain day due to a religious holiday or observance.

## Violation of FMLA/CFRA Protected Leave

On September 17, 2020, Governor Gavin Newsom signed into law Senate Bill No. 1383, a new California Family Rights Act (CFRA). Gov't Code §12945.2, et seq.

The CFRA provides that "it shall be unlawful to discharge or discriminate against an employee following his exercise of the right to family care and medical leave under CFRA."

The California Family Rights Act (CFRA) guarantees certain employees the right to take family medical leave for a serious health condition. See Gov't Code §12945.2. An employer's interference with an employee's right to take such protected leaves, and/or retaliation for taking such a leave violates California law. See Gov't Code § 12945.2(t).

An employer interferes with an employee's right to take a protected leave when it takes adverse action against an employee because the employee requested or gave notice of intent to take a protected leave, or when it fails to provide an employee with proper notice of his or her right to take leave. *See Liu v. Amway Corp.* (9th Cir. 2003) 347 F.3d 1125, 1137; *Scott v. Winco Foods, Inc.* (E.D. Cal. 2011) 2011 U.S. Dist. LEXIS 23389, *14.

Intent/motive are immaterial on a CFRA/FMLA violation--i.e., for failing to grant leave and reinstate. See *Avila v. Cont'l Airlines, Inc.* 165 Cal. App. 4th 1237, 1260 (2008) ("Once an employee has submitted a request for leave under CFRA, the employer is charged with knowledge that the employee's absences pursuant to the leave request are protected, and may not thereafter take adverse employment action against the employee based upon -- that is, "because of"--those protected absences."). See id at 1260-61 ("Unlike in the FEHA situation, it is not necessary to show that a particular management employee subjectively *knew* that an employee's absences were protected under CFRA to establish a causal connection between an employee's CFRA leave and an adverse employment action taken "because of" the absences."); see also *Bachelder v. America West Airlines, Inc.* 259 F.3d 1112, 1125 (9th Cir. 2001) (The Act "plainly prohibits the use of FMLA-protected leave as a negative factor in an employment decision."

It is unlawful for an employer to fail to reinstate Plaintiff after taking protected leave. *Roberts v. Ground Handling, Inc.* (S.D.N.Y.,2007) 499 F.Supp.2d 340, 356. "..[T]he FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends..... Thus, evidence that an employer failed to reinstate an

employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights." *Sanders v. City of Newport* (2011) 657 F.3d 772, 778.

## Disability Discrimination in Violation of FEHA

The FEHA prohibits retaliation against employees who request or obtain reasonable accommodation or disability leave. Government Code §§12940(h); 2 *CCR* §7291.14. The causal link may be established by circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision. Evidence regarding the timing of an adverse employment action, the identity of the decision maker(s), and the employee's performance is relevant to establish that the reason offered for the adverse employment action is pretext. See *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615.

California's Fair Employment & Housing Act is to "be liberally construed and applied to promote its underlying purposes." Government Code §12603. In FEHA, the Legislature has declared, as a matter of public policy, the need to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination. Government Code § 12920. Section 12920 further provides, in pertinent part: "It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general."

Under FEHA, it is "an unlawful employment practice, unless based upon a bona fide occupational qualification . . . (a) For an employer, because of the . . . physical disability . . . of any person . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (§12940, subd. (a).)

The FEHA expressly incorporates the ADA as a "floor" of protection. Government Code §12926.1(a) ("Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections."). "[T]he duty of an employer to provide reasonable accommodation for an employee with a disability is broader under the FEHA than under the ADA." *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 362 (holding that EEOC regulations governing the scope of the accommodation duty are not applicable to claims arising under the FEHA). My client falls squarely under the broad protection of the FEHA.

## My Client was a Qualified Person with a Disability

California Government Code § 12926.1 provides in relevant part:

(b) The law of this state contains broad definitions of physical disability, mental disability, and medical condition. It is the intent of the Legislature that the definitions of physical disability and mental disability be construed so that

applicants and employees are protected from discrimination due to an actual or perceived physical or mental impairment that is disabling, ***potentially disabling***, or perceived as disabling or potentially disabling.

(c) ...In addition, the Legislature has determined that the definitions of "physical disability" and "mental disability" under the law of this state require a "limitation" upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a "substantial limitation." This distinction is intended to result in broader coverage under the law of this state than under that federal act. Under the law of this state, whether a condition limits a major life activity shall be determined without respect to any mitigating measures, unless the mitigating measure itself limits a major life activity, regardless of federal law under the Americans with Disabilities Act of 1990. Further, under the law of this state, **"working" is a major life activity, regardless of whether the actual or perceived working limitation** implicates a particular employment or a class or broad range of employments.

(Emphasis added).

In *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019,1026; 63 P.3d 220,223; 130 Cal.Rptr.2d 662, 666, the California Supreme Court made it clear that the Courts are to implement the broad language of Government Code § 12926.1 such that any limitation which makes it difficult to achieve a major life activity is a disability within the meaning of FEHA.

The ADA prohibits employer discrimination with respect to an individual who is "regarded as having an impairment" that significantly limits his or her ability to work or other major life activity. 42 USC § 12102(2)(C), *American Nat'l Ins. Co. v. Fair Employment & Housing Comm'n* (1982) 32 Cal.3d 603, 609, 186 Cal.Rptr. 345, 349.[1]

The purpose of FEHA is to prevent and eliminate discrimination in the workplace. *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493, 59 Cal.Rptr.2d 20, 926 P.2d 1114. "The FEHA itself requires that we interpret its terms liberally to accomplish the stated legislative purpose". *Fisher v. San Pedro Peninsula Hospital* (1998) 214 Cal.App.3d 590, 624, 262 Cal.Rptr.

California Civil Jury Instructions (CACI) 2500 instructs that the elements of a claim for disparate treatment are:

1.      That defendant was an employer;

---

[1] Federal Americans with Disabilities Act (ADA) cases are generally helpful in interpreting the California Fair Employment and Housing Act (FEHA) except where FEHA provides greater protections to employees than the ADA. *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 425, 69 Cal.Rptr.3d 1, 10.

2.      That defendant discharged (or took other adverse employment action against) plaintiff;

3.      That plaintiff's protected status (for example, disability) was a motivating reason for the discharge/other adverse employment action;

4.      That plaintiff was harmed; and

6.      That the discharge/other adverse employment action was a substantial factor in causing plaintiff's harm.

BAJI Civil Jury Instruction 12.01.1. instructs that:

A motivating factor is something that moves the will and induces action [even though other matters may have contributed to the taking of the action]. (Also see 42 U.S.C.A. § 2000e-2(m)).

Even if there is some legitimacy to the proffered reason (work slowdown / reduction in force / poor work performance), Plaintiff can prevail by proving that discrimination was a motivating factor in the adverse action, even though other non-discriminatory reasons may have been involved. 42 USCA § 2000e-2(m). "Plaintiff need only 'demonstrate' that an employer used a forbidden consideration with respect to any employment practice." *Desert Palace, Inc. v. Costa* (2003) 539 U.S. 90, 91; 123 S.Ct. 2148, 2149.

It follows that direct evidence of discriminatory intent is not required in mixed-motive cases. *Desert Palace, Inc.*, 539 U.S. 91, 123 S.Ct. 2149.

A prima facie case of discrimination in employment can be made by showing disability, action based on that disability which adversely affects employment opportunities, and that others were not similarly treated when suffering temporary disabilities. *Roller*, 572 F.2d 1313.

FEHA establishes a comprehensive scheme for combating and eliminating employment discrimination. *Brown v. Superior Court* (1984) 37 Cal.3d 477, 485; §12920. Employment discrimination is broadly defined in section 12940. Particularly relevant to the present case is the section's prohibition of an employer's discrimination against any person in terms, conditions or privileges of employment because of disability. Section 12940 provides in pertinent part:

"It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

"(a) For an employer, because of the ... *physical disability* ... to discharge the person from employment ... , *or to discriminate against the person in compensation or in terms, conditions or privileges of employment*." (Emphasis added).

## Failure to Engage in the Interactive Process

California <u>Government Code</u> § 12940 provides, in relevant part that it is an unlawful employment practice:

(n) For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

The duty to engage in the interactive process is ongoing and continuing. *See e.g.*, *Humphrey v. Memorial Hospitals Association* (9th Cir. 2001) 239 F.3d 1128, 1138 ("...the employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule protects the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work...."); *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 821 ("[R]easonable accommodation is often an ongoing process rather than a single action.").

In *Claudio v. Regents* (2005) 134 Cal.App.4th 224, the Third District Court of Appeal provides that an employer's statutory failure to accommodate, and failure to engage in the interactive process with an employee who has a disability, respectively, gives rise to independent causes of action. Employers who are aware of an employee's disability have an affirmative duty to make reasonable accommodations for such disability. Importantly, the *Claudio* Court holds that the employer will be liable in an interactive process claim **when the breakdown in the interactive process is attributable to the employer, even absent proof that some accommodation would have worked**. 134 Cal.App.4th at 249.

The Court held, "The Regents also submitted evidence that no alternative positions were available at the University campus for the apparent job skills reflected in Ms. Silva's original job application and resume. However, since we conclude a triable issue exists concerning failure by the University to participate in the interactive process, the judgment cannot be affirmed on the ground that no alternative jobs were available." Ibid. The purpose of the interactive process is to explore options in an effort to accommodate, and here, the Company completely and utterly failed in this regard.

In determining who caused the "breakdown" in the interactive process, the Court will look for "signs of failure to participate in **good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. . . .[i]n essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility**." *Beck v. Univ. of Wisc. Board of Regents* (7th Cir. 1996) 75 F.3d 1130, 1135 (Emphasis added).

## Failure to Accommodate Disability

California Government Code § 12940 provides, in relevant part, that it is an unlawful employment practice:

April 23, 2025
Page 11

(m)     For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee....

An employee is not required to make a specific request for accommodation if the employer is on notice of the employee's disability. *Barnett v. U.S. Air, Inc.* (9th.Cir.Cal.2000) 228 F.3d 1105, 1114.

"Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future." *Jensen v. Wells Fargo Bank*, (2000) 85 Cal.App.4th 245, 263. "Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer." *Nunes v. Wal-Mart Stores* (9th Cir. 1999) 164 F.3d 1243, 1248.

In *Prillman v. United Airlines* (1997) 53 Cal.App.4th 935, 62 Cal.Rptr.2d 142, the California Court of Appeal described an employer's obligations as follows:

Employers must make reasonable accommodations to the disability of an individual unless the employer can demonstrate that doing so would impose an undue hardship. Reasonable accommodation may, but does not necessarily, include, nor is it limited to, such measures as: Job restructuring, reassignment to a vacant position, part-time or modified work schedules....

The law and the regulations clearly contemplate not only that employers remove obstacles that are in the way of the progress of the disabled, but that they actively restructure their way of doing business in order to accommodate the needs of their disabled employees...

...an employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions...

*Prillman*, 53 Cal.App.4th 935, 947-951; 62 Cal.Rptr.2d 142, 147-150 (emphasis added).

## The Company Would Not Have Encountered "Undue Hardship"

The FEHA defines an undue hardship as "an action requiring significant difficulty or expense, when considered in light of the following factors: (1) the nature and cost of the accommodation needed, (2) the overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility, (3) the overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities, (4) the type of operations, including the composition, structure, and functions of the workforce of the entity, and (5) the geographic separateness, administrative, or

fiscal relationship of the facility or facilities." Government Code §12926(s); 2 Cal. Code Regs. §7293.9(b).

## Failure to Take Reasonable Steps to Prevent Harassment and Retaliation

Government Code §12940(k) provides that it shall be unlawful for an employer to "fail to take all reasonable steps necessary to prevent *discrimination* and *harassment* from occurring." (*Emphasis added*). See *California Fair Employment and Housing Commission v. Gemini Aluminum Corporation*, 122 Cal.App.4th 1004 (2004). This provision creates a statutory tort action with the usual tort elements (duty of care to plaintiff, breach of duty, causation and damages). *Trujillo v. North Co. Transit Dist.* (1998) 63 CA4th 280, 286, 73 CR2d 596, 600.

FEHA prohibits an employer from discriminating an employee on the basis of race, holds an employer liable for harassment of an employee by another employee if the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action, requires the employer to take all reasonable steps to prevent harassment from occurring, and prohibits retaliation against any person opposing any forbidden practice." *Fisher, supra* at 606.

Not only is the effect on the employee's psychological well-being relevant in determining whether plaintiff actually found the environment abusive, the employer's response to plaintiff's report of harassment may also be determinative. *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 22; *Brooks v. City of San Mateo*, (9th Cir. 2000) 229 F.3d 917, 926. In other words, the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively by the employer. *Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 77. From ignoring a third party's attempt to intervene, followed by a sham investigation and a swift attempt at moving the complainant, a jury will not hesitate to find that the store was a hostile environment. In fact, Defendant's conduct reflects a textbook example of what not to do. *Ellison v. Brady* (9th Cir.1991) 924 F.2d 872, 878 held that it is improper to simply move the harassee.

Employers have a legal duty to conduct prompt, good faith, impartial investigations which are reasonable under the circumstances. *Swenson v. Potter* (9th.Cir.Cal.2000) 271 F.3d 1184, 1192, *Cellini v. Harcourt Brace & Co.* (S.D.Cal.1999) 51 F.Supp.2d 1028, 1039. Bad faith, and even malice, may be inferred from a failure to investigate a discrimination complaint. *Cadena v. Pacesetter Corp.* (10th.Cir.2000) 224 F.3d 1203, 1209 (Punitive damages based, in part on the investigation which was "inadequate...if not a complete sham"). In fact, an investigation is owed even if the alleged harasser denies the accusation and the victim wishes to drop the matter. The employer must investigate from a "worst case scenario" in order to avoid exposing other employees to the alleged misconduct. *Malik v. Carrier Corp.* (2nd Cir. 2000) 202 F.3d 97, 107.

## Retaliation

Government Code §12940 prohibits retaliation against employees based on the employee's religion, sex, age, disability, color, race and/or national origin.

The causal link may be established by circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision. Evidence regarding the timing of an adverse employment action, the identity of the decision maker(s), and the employee's performance is relevant to establish that the reason offered for the adverse employment action is pretext. See *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615.

"[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Prods., Inc.* (9th Cir. 2000) 212 F.3d 493; *Calero-Cerezo v. United States Dept. of Justice* (1st Cir. 2004) 355 F.3d 6, 25 (1 month sufficiently close to create inference of causal connection). Similarly, in *Jie*, supra, 89 Cal. App 4th 654, 665, a husband and wife complained about the employer's use of undocumented workers. Within three months, the employer fired the plaintiffs, giving rise to an inference of retaliation. The appellate court held that this was sufficient to support an inference of retaliation and to support a jury verdict of wrongful termination.

In *Flait*, the appellate court observed that retaliation could be inferred where the evidence showed the plaintiff was fired "only a few months after he last confronted [the employer]." *Flait*, supra, 3 Cal. App. 4th at 478; see also *Fisher*, supra, 214 Cal. App. 3d 590, 615 ("The retaliatory motive is 'proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter.'"); *Miller v. Fairchild Industries, Inc.*, 885 F. 2d 498 (9th Cir. 1986) (directed verdict for employer reversed where management was aware of employees' EEOC charges against company and employees were laid off within weeks after those charges were filed); *Yartzoff v. Thomas*, 809 F. 2d 1371, 1376 (9th Cir. 1987) ("causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision").

When the issue is defendants' motive, inferences are often all a jury has to weigh in determining the motivation behind a termination. See, e.g., *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985) (where motive is at issue, fact finder must weigh evidence).

There is no requirement that plaintiff submit direct evidence of a causal connection between protected conduct and termination. No defendant is likely to acknowledge that it terminated an employee for protected conduct. Instead, the jury must infer the connection, and such inference can be made where "defendants knew that plaintiff knew the law [and] knew defendants were violating it." *Jie v. Liang Tai Knitwear Co., Ltd.*, 89 Cal. App 4th 654, 665 (2001). As the *Jie* court observed, "evidence includes inferences that can be drawn from other evidence." *Id.* at 665.

## Wrongful Termination in Violation of Public Policy

A plaintiff may bring a tort action for retaliation in violation of public policy when an employer retaliates against him for exercising a statutory privilege or right. Accordingly, my client's wrongful termination claim is grounded in the public policies articulated above.

"[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170, 164 Cal.Rptr. 839, 610 P.2d 1330.

## Unfair Business Practices

Business & Professions Code §17200 *et seq.* ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice." In order to state a claim for relief under California Business & Professions Code §17200 *et seq.*, an employee need only establish that an employer's conduct was unlawful, unfair, or fraudulent. See *Berryman v. Merit Property Management, Inc.* (2007) 62 Cal. Rptr. 3d 177, 186.

## DAMAGES

My client's potential damages for the above-described causes of action would be substantial. My client will undoubtedly recover sizeable emotional distress damages including headaches, nausea, heartburn, stress, depression, loss of motivation, anxiety, fear, grief, and insomnia as my client has suffered greatly.

### A. Economic Damages:

#### 1. Premiums / Penalties for Labor Law Violations

#### 2. Lost Income to Date

Despite a diligent search, my client has been unable to find comparable employment since the date of termination, and these damages will continue to accrue until my client obtains comparable employment.

#### 3. Loss of Future Income

My client is additionally entitled to a significant amount of loss of future income. The Supreme Court has cited with approval lower court cases upholding loss of future income awards "equal to the estimated present value of lost earnings that are reasonably likely to occur between the date of the judgment and the time when the employee can assume his new position." *Pollard v. E.I. du Pont de Nemours & Co.,* 532 US at 850 at 1950. A loss of future income award has been upheld under California law that compensated plaintiff for the remainder of plaintiff's entire working life. *Bihun v. AT & T Information Systems, Inc.* (1993) 13 Cal.4th 976, 996-997, (disapproved on other grounds in *Lakin v. Watkins Assoc. Industries* (1993) 6 Cal.4th 644).

## B. Emotional Distress / Pain and Suffering

My client suffered and continues to suffer from significant emotional distress, including anxiety, depression and humiliation due to the harassment. Thus, my client will be likely to recover from a jury a significant amount in emotional distress damages as a result of the Company's illegal conduct.

## C. Punitive Damages

If this case proceeds to trial, a jury is likely to find that the Company's conduct, through the actions of its executive officers was oppressive and/or malicious. See California Civil Code § 3294(a). A jury would likely award punitive damages if this case were to go to trial.

## D. Attorneys' Fees

Virtually all of my client's claims include statutory attorneys' fees. See Government Code §12965(b). Naturally, the availability of attorneys' fees here greatly increases the risk to the Company and virtually ensures a sizeable recovery for my client. These fees are subject to a "lodestar" multiplier and are typically awarded in contingency fee employment rights cases such as this one. *Beaty v. BET Holdings, Inc.* (9th Cir. 2000) 222 F.3d 607, 610. Any award of attorneys' fees in this case will be substantial. There is little doubt that through trial, *each party* will have incurred significant six figures in attorneys' fees. Moreover, in the event of a successful verdict, we anticipate that the Court would award a multiplier. Thus, any verdict for my client will lead to a significant attorneys' fees award.

## Request for Employee's Payroll & Personnel Files

Irrespective of the foregoing, let this serve as a request pursuant to Labor Code §§ 226(c), 432, and 1198.5, that the Company immediately forward to my attention, my client's entire personnel file, including, but not limited to, my client's employment records, personnel records and all documents signed by my client. My client's Authorization to Release Employment and Payroll Records is also enclosed. Notably, Labor Code § 226 (c) provides in relevant part that "An employer who receives a written or oral request to inspect or copy records pursuant to subdivision (b) pertaining to a current or former employee shall comply with the request as soon as practicable, but *no later than 21 calendar days from the date of the request*. A violation of this subdivision is an infraction..." Furthermore, Labor Code § 1198.5 provides that employers must respond to an employee's (or employee representative's) written request for my client's personnel file within 30 days. Failure to comply with this statute can result in a $750 penalty, and gives rise to claims for injunctive relief and attorneys' fees. Labor Code §§ 226(f).

## Duty to Avoid Spoliation of Evidence

The Company must undertake all efforts to preserve from spoliation all documents or other records relating to my client's employment. We request that you not destroy, conceal, or alter any paper records, electronic files, voicemails, or other data generated by and/or stored in

April 23, 2025
Page 16

any of your files, on your computer systems, or on storage media such as notes, emails, texts, and other electronic communications, word processing documents, spreadsheets, databases, calendars, telephone logs, internet usage, files, drafts, computer records and programs, network access information, off-line storage or information stored on removable media, and information contained on laptops or other portable devices such as Blackberrys and iPhones. The laws and rules of evidence also apply to electronically-stored information. As you know, electronic documents (and the storage media on which they reside) contain relevant, discoverable information beyond what may be found in printed documents. Thus, even where a paper copy exists, we are interested in documents in their original/native electronic format along with metadata or information about these documents contained in the media. Electronic information is easily manipulated, so accordingly, you must take every reasonable step to preserve this information until the final resolution of the various disputes. These same obligations apply to electronic or hardcopy data created subsequent to the date of this letter. Such data must be preserved and not destroyed, and you are required to take the appropriate steps to avoid the destruction or corruption of such evidence. Please advise all persons and entities with custodial responsibility for your books, records, information, and documents of their obligations to preserve all documents and information. As you should know, spoliation gives rise to an inference that the missing documents would have proved the charging party's case.

## Request for Applicable Insurance Policy

Please provide this office with information regarding any applicable insurance policies that may provide the Company with coverage in this matter, including EPLI, D&O and General Liability Insurance.

## Conclusion

My firm remains prepared to litigate this case though trial, but I realize that it may be in the best interests of the Company to explore the possibility of early settlement. Should we be successful at trial, I anticipate that my attorneys' fee petition alone could be several hundred thousand dollars. In effect, the Company would be paying me to pursue any lawsuit filed against it on behalf of my client. Additionally, the Company would also be responsible for paying its own attorneys' fees. Accordingly, we propose that the parties negotiate in good faith.

If I do not hear from you or your attorneys by **May 23, 2025**, we will assume that you are not interested in settling this matter and we will proceed to file the appropriate complaint on behalf of my client. Toward that end, enclosed herewith is my client's Complaint filed with the California Civil Rights Department and Right-To-Sue Notice, thus clearing the way for the filing of a civil action.

Thank you for your anticipated courtesy and cooperation.

Very truly yours,
LAW OFFICE OF EDWARD ANTONINO

Edward Antonino, Esq.

Docusign Envelope ID: 8640/922-DD0C-41A4-BE05-F0242905563E4

# AUTHORIZATION TO RELEASE EMPLOYMENT AND PAYROLL RECORDS

I hereby authorize _____ Maximus LLC _____ an agent, designee, or representative of the LAW OFFICE OF EDWARD ANTONINO (Employer's name) to furnish to with information regarding my employment. This includes, but is not limited to, any documents I signed relating to obtaining or holding employment (Labor Code §§ 432), records in my personnel file used to determine my qualifications for employment, promotion, additional compensation, termination or other disciplinary action (Labor Code §1198.5), as well as payroll records pertaining to dates of employment and time sheets (Labor Code § 226) and records related to any worker's compensation claim or work injury reported by me.

I understand that I have a right to privacy in my employment records and worker's compensation records. I expressly waive my right to privacy to the extent that the records are produced to the LAW OFFICE OF EDWARD ANTONINO and I give my consent to the LAW OFFICE OF EDWARD ANTONINO to utilize those records as they deem appropriate.

PHOTOCOPIES OF THIS AUTHORIZATION ARE TO BE DEEMED ORIGINALS.

Dated: 3/11/2025

NAME (printed): Audrea Barnes

SIGNATURE: _Audrea Barnes_
DocuSigned by:
CAE4C0E57C77A7E



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

August 29, 2024

Nicole Heeder
2727 Camino del Rio S., Suite 140
San Diego, CA 92108

RE:     **Notice to Complainant's Attorney**
CRD Matter Number: 202408-25938623
Right to Sue: Barnes / Maximus Services, LLC et al.

Dear Nicole Heeder:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2024/05)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

August 29, 2024

RE:   **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202408-25938623
Right to Sue: Barnes / Maximus Services, LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2024/05)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

August 29, 2024

Audrea Barnes

,

RE:    **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202408-25938623
Right to Sue: Barnes / Maximus Services, LLC et al.

Dear Audrea Barnes:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective August 29, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2024/05)

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
## Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of

Audrea Barnes

Complainant,

CRD No. 202408-25938623

vs.

Maximus Services, LLC
1891 Metro Center Dr.
Reston, VA 20190

Maximus, Inc.
1600 TYSONS BOULEVARD, 14TH FLOOR
McLean, VA 22102

Respondents

_____

1. Respondent **Maximus Services, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant is naming **Maximus, Inc.** business as Co-Respondent(s).

3. Complainant **Audrea Barnes**, resides in the City of , State of .

4. Complainant alleges that on or about **August 4, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's color, family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies, race (includes hairstyle and hair texture).

**Complainant was discriminated against** because of complainant's color, race (includes hairstyle and hair texture) and as a result of the discrimination was terminated, laid off, reprimanded, denied equal pay, demoted, denied any employment benefit or privilege, denied accommodation for religious beliefs, other, denied work opportunities or assignments, denied or forced to transfer, denied family care and medical leave (cfra)

-1-
Complaint – CRD No. 202408-25938623

Date Filed: August 29, 2024

CRD-ENF 80 RS (Revised 2024/05)

related to serious health condition of employee or family member, child bonding, or military exigencies.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result was terminated, laid off, reprimanded, denied equal pay, demoted, denied any employment benefit or privilege, denied accommodation for religious beliefs, other, denied work opportunities or assignments, denied or forced to transfer, denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Additional Complaint Details:** I was working at Maximus as a temporary employee through Manpower, when Maximus recruited me for a Analyst- Business Analysis position. I was hired for the position on or about May 2, 2022. I was the only African American under the supervision of Mai Vang, Director of Maximus' Business Anaysis Department. On or about June 29, 2022, Maximus informed me that I was being reclassified effective June 26, 2022, and returned to the Call Center as a Team Leader in approximately six months. I was moved to the Call Center on or about November 14, 2022. The demotion to Team Leader in the Call Center came with a reduction in salary from $62,400.00 to $39,520.00 per year. On December 8, 2022, I filed a formal complaint for unfair treatment through Maximus' complaint platform. As an African American female, and the only African American Team Lead, Maximus paid me less than all of the other non-African American Team Leads despite my equivalent experience and without reliance on a bona fide factor for the pay difference. I was denied training for the phone lines and set up to fail. Whereas other Team Leads and Customer Service Reps were trained on the 11 phone lines, I had only ever worked one line in the Call Center and was never formally trained. My supervisor, Dion Allen, gave me unfair performance reviews and mutiple unjustified reprimands for violations of policies that were new since my first round in the Call Center and on which Maximus neither informed or trained me. I was also denied company equipment that was provided to other employees for fullfillment of our roles, and was forced to buy my own equipment (computer, headphones, microphone, ethernet cable, Microsoft Office Suite) to perform my Call Center role, even though I already had some of the company equipment from my Business Analyst role. I was prohibited from and reprimanded for wishing anyone a Merry Christmas, or using the words/phrases, "God," "God bless you," and "Jesus" even though others were allowed to use these words/phrases and express their own holiday sentiments including for Christmas. In April 2023, I contracted Covid-19 and I was denied timesheet approval and a request for vacation pay to cover the days I was unable to work and did not have sick leave. On May 5, 2023, I applied for CFRA leave. Meximus cut my protected leave short and claimed that I was on leave in April and May when I was not. The department manager gave the employees in my department, including me, a performance aptitude test without Human Resources' knowledge that could not easily be passed without the necessary training, and then used this test to terminate my employment.

-2-
Complaint – CRD No. 202408-25938623

Date Filed: August 29, 2024

CRD-ENF 80 RS (Revised 2024/05)

VERIFICATION

I, **Nicole Heeder**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On August 29, 2024, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

San Diego, California

-3-
Complaint – CRD No. 202408-25938623

Date Filed: August 29, 2024

CRD-ENF 80 RS (Revised 2024/05)